**LOCAL NO. 406, INTERNATIONAL UN-
ION OF OPERATING ENGINEERS,
AFL–CIO, Plaintiff-Appellant,**

v.

**The AUSTIN COMPANY,
Defendant-Appellee.**

No. 85–3190.

United States Court of Appeals,
Fifth Circuit.

March 17, 1986.

Marie Healey, William Lurye, Metairie, La., for plaintiff-appellant.

Frank Borda, Washington, D.C., Stephen D. Ridley, New Orleans, La., for defendant-appellee.

Before THORNBERRY, RUBIN and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Local 406, alleging breaches of a collective bargaining agreement by the employer's subcontracting and refusing to arbitrate the grievance, appeals the district court's entry of summary judgment in favor of The Austin Company. The district court found that the underlying grievance was untimely under the terms of the agreement and held the right to arbitration to have been waived. Because this case presents issues of procedural arbitrability, we vacate the order of summary judgment and remand to the district court with instructions to enter an order compelling arbitration.

## I.

In 1980, Local 406, International Union of Operating Engineers (the Union) entered into a short form agreement with The Austin Company (Austin), an engineering and construction company. The signing of the short form bound Austin to the master collective bargaining agreement then in effect between the Union and the New Orleans Chapter of the Associated General Contractors of Louisiana, Inc. The master agreement provided for a specific grievance and arbitration procedure to be used whenever a dispute arose over an alleged violation of a particular provision of the agreement. Under this provision, an arbitrator is chosen from a set panel of four men, his decision to be final and binding on the parties. Section 8 of Article XVI provided that if a dispute was not referred to arbitration "within thirty (30) days after the occurrence of the event which gave rise thereto, the dispute or grievance shall be considered finally settled and waived."

In September 1982, the Union received information that Austin had some kind of contract with Hydril Company (Hydril). Peter Babin, the Union's business manager and financial secretary, sent two Union business agents to "evaluate" the Hydril job site in Westwego, Louisiana. The agents were told by an Austin representative that Austin was acting merely as a "broker" or an "in-between" on the Hydril job.

Babin then wrote to Austin on October 18, 1982, requesting information on Austin's status at the Hydril project. The Union indicated that it was aware of the possibilities that work covered by the collective bargaining agreement was being done by non-Union employees on the Hydril project and that Austin was acting as the prime contractor on the Hydril job. Babin accused Austin of not complying with the terms of the collective bargaining agreement, especially Article XV(f) [1] and Article XXIII, Section 3,[2] because no Union employees had been solicited for the Hydril job.

In response, Austin's vice president wrote to Babin on October 27, 1982, that Austin "does not yet 'have' the Hydril job," that Austin was the construction manager on the Hydril job, and that "as construction manager, we will not directly hire any tradesmen."

The evidence shows that Austin had entered into a contract with Hydril in August 1982 to act as "construction manager" at Hydril's Westwego plant. Austin's function as construction manager was to act as Hydril's agent, hiring site-preparation contractors on Hydril's behalf but in Austin's name. Within three days of contracting with Hydril, Austin had hired Brothers Construction, Inc. (Brothers) and Kendall Construction Co., Inc. (Kendall) for the site preparation. Neither Brothers nor Kendall was signatory to the collective bargaining agreement with the Union. Brothers worked at Hydril from August 1982 to November 1982, and Kendall worked at Hydril from August 1982 to February 1983.

It was not until April 14, 1983, that the Union filed a grievance against Austin by writing to Austin's Industrial Relations Manager. The grievance letter claimed that Austin violated the collective bargaining agreement by subcontracting work, covered by the agreement, to subcontractors who have "no current agreement with

1. Article XV, entitled "Referral," includes the following paragraph:

The Contractors will notify the Union within seven (7) days following their employment of the names of any individuals employed under the provisions of this paragraph (f) who have not been referred to them by the Union.

2. Under the heading "Maintenance of Standards and Subcontracting," the agreement requires the following:

Section 3. The Contractor agrees that he will not *contract* or *subcontract* work covered under the terms of this Agreement, to be done at the site of construction, alteration, painting or repair of a building, structure, or other work, except to a person, firm or corporation party to an appropriate current labor agreement with this Union. (Emphasis added.)

the Union." The Union asked for relief in the form of lost wages plus interest for Union members, and demanded that Austin "immediately redirect the work at the Hydril project to a company having an agreement with the Union." The Union also indicated in this letter that unless a timely settlement was reached between the parties, "arbitration is hereby demanded in accordance with Section 3 of the contract." The Union suggested the names of three arbitrators, none of whom is included in the list of arbitrators in Article XVI of the collective bargaining agreement.

Austin did not respond to the Union's grievance letter. The Union filed a section 301 suit, 29 U.S.C. § 185(a) (1982), in July 1983, alleging that Austin had violated the subcontracting clause of the collective bargaining agreement by subcontracting work at the Hydril plant to construction companies not signatory to the contract, and that Austin had neither corrected the violation nor arbitrated the dispute in accordance with grievance arbitration procedures in the contract.

Austin moved for and was granted summary judgment. The district court found that Austin had subcontracted out jobs to the non-Union contractors. The district court also concluded, however, that the Union knew of the alleged violation in October 1982 and did not attempt to initiate the grievance process until April 1983, "more than six months after it had knowledge that non-signatory companies were hired as sub-contractors." Since the period of time exceeded the thirty days allowed by the collective bargaining agreement, the district court found that the grievance was untimely filed and held it to have been waived. The Union then filed a timely appeal to this court.

## II.

Local 406 contends on appeal that the district court erred in granting summary judgment to Austin. The Union claims that there exist genuine issues of material fact as to whether the Union had knowledge of the allegedly impermissible subcontracting more than thirty days before it filed the grievance, and whether the April 14, 1983, grievance letter was untimely. The Union maintains that it did not know the specifics of Austin's contract with Hydril until after this lawsuit was filed in July 1983, and that it only came to know of the involvement of Brothers and Kendall through discovery in this action.[3] Austin, on the other hand, argues that because the grievance was not timely filed and because the Union has not properly referred the dispute to an arbitrator, Austin has no duty to respond to the grievance or to submit to arbitration. Neither Austin nor Local 406 denies that the subject matter of their dispute is covered by their contractual agreement to arbitrate.

The parties contend that the issue in this case is whether the district court properly granted summary judgment on the grounds that there exists no genuine issue of material fact. We, however, view the issue as whether the district court was correct to decide the timeliness issue at all, since the question presented is the procedural arbitrability of the dispute.

## III.

■ Whether the relevant thirty-day period had expired by the time the Union wrote its letter on April 14 is a timeliness question, and a question of timeliness is generally considered to be one of procedural arbitrability. *See, e.g., John Wiley & Sons, Inc., v. Livingston*, 376 U.S. 543, 84

---

**3.** The Union also argues that even if the district court was correct to find that the Union had the critical knowledge in October 1982, the April grievance still was not untimely because Austin was committing a "continuing violation" throughout the duration of the subcontracting. Under this "continuing violation" theory, every day that subcontracted work was performed in violation of the contract, a new thirty-day limi-

tations period began to run on a new grievance. Because there is a genuine issue of material fact as to when the Hydril work began and ended, argues the Union, Austin is not entitled to summary judgment as a matter of law. Because we find that this case should be presented to an arbitrator, not a federal court, we do not decide whether the continuing violation theory is applicable to this case.

S.Ct. 909, 11 L.Ed.2d 898 (1964); *Dlugach v. Jefferson Chemical Co.*, 501 F.Supp. 171 (E.D.Tex.1980). In *Wiley*, the Supreme Court required a successor employer to submit to arbitration pursuant to a prior employer's labor agreement, even though the successor had neither signed or assumed the agreement nor agreed to arbitrate. In addition to denying its obligation to arbitrate at all, Wiley objected to arbitration on the grounds of so-called "procedural arbitrability." The labor agreement provided for arbitration as Step 3 of a three-step procedure. Wiley argued that Step 1 and Step 2 had not been followed, so it had no duty to submit to Step 3 arbitration. The Supreme Court was presented with the question whether procedural conditions to arbitration are to be decided by the courts or by the arbitrator.

The Court rejected Wiley's argument that courts should decide whether procedural conditions have been met so as to make a dispute arbitrable under the collective bargaining agreement. The Court reasoned that procedural issues are often inseparable from the merits of the underlying grievance. "[P]rocedural disagreements [are to be regarded] not as separate disputes but as aspects of the dispute which called the grievance procedures into play." *Wiley*, 376 U.S. at 559, 84 S.Ct. at 919. Once it is decided that a dispute is covered by the arbitration agreement, procedural questions are for the arbitrator. *Wiley*, 376 U.S. at 557, 84 S.Ct. at 918; *Alabama Power Co. v. Local Union No. 391, International Brotherhood of Electrical Workers*, 612 F.2d 960, 962–63 (5th Cir.1980). Here it is clear that the underlying dispute giving rise to the grievance is covered by the arbitration provision.

The resolution of this case is also governed by our own precedent, *Alabama Power, supra.* After losing its case before an arbitrator, Alabama Power sued in federal court to set aside the arbitral award. The company argued that the arbitrator lacked jurisdiction over the dispute because the union had not properly presented the grievance in accordance with procedures prescribed in the collective bargaining agreement. Our court held that even though the union had not filed a grievance and the company had not agreed to submit to arbitration, *Wiley* controlled. "If the subject matter of the dispute is arguably arbitrable (resolving all doubts in favor of coverage), then it is for the arbitrator to decide whether or not the dispute may be arbitrated." *Alabama Power*, 612 F.2d at 963.

 In the case before us today, the issue is whether the procedural requirements for grievance and arbitration have been followed. The questions presented by this case, therefore, are most properly before an arbitrator of industrial relations, not before a federal court.

The district court's order of summary judgment is vacated, and this case is remanded to the district court for the sole purpose of entering an order compelling arbitration.

VACATED AND REMANDED.