**T & G CONSTRUCTION CO., INC.**

v.

**SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, LOCAL 100.**

**Civ. No. JFM–91–3698.**

United States District Court,
D. Maryland.

March 2, 1992.

---

Katherine Kristin C. Brewer, Gary L. Lieber, Schmeltzer, Aptaker & Shepard, Washington, D.C., for plaintiff.

Richard M. Resnick, Sherman, Dunn, Cohen, Leifer & Yillig, P.C., Washington, D.C., for defendant.

## MEMORANDUM

MOTZ, District Judge.

This action has been brought by T & G Construction Co., Inc. ("T & G") against Sheet Metal Workers' International Association, Local 100 ("the Union"), seeking an injunction against the arbitration of a dispute between the parties.[1] The parties have filed cross-motions for summary judgment.

### I.

T & G is a construction contractor headquartered in Suitland, Maryland. It became a party to a collective bargaining agreement with the Union which had a stated term running from July 1, 1987 to June 30, 1990. The agreement was identical to an agreement negotiated by the Union with the Sheet Metal Contractors Association of the District of Columbia, Inc. However, T & G has never been a member of the Association and never authorized the Association to negotiate with the Union on its behalf.

As the stated June 30, 1990 expiration date for the collective bargaining agreement approached, T & G and the Union engaged in negotiations over a new agreement. However, no agreement was reached. For some weeks after the June 30th deadline passed, the parties continued

---

1. On January 3, 1992, I denied a motion for preliminary injunction filed by T & G seeking a stay of the arbitration. In denying the motion, I indicated that I believed myself bound by the Fourth Circuit's decision in *District 29, UMW v. New Beckley Mining Corp.*, 895 F.2d 942 (4th Cir.1990) to apply the standards for a preliminary injunction established by the Norris–LaGuardia Act, 29 U.S.C. §§ 101–15, and found that T & G had not met those standards. I further stated, however, that if *New Beckley* did not control the issue, I would find that T & G met the standards for a preliminary injunction under Fed.R.Civ.P. 65(a) as articulated by the Fourth Circuit in *Blackwelder Furn. Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir.1977). T & G appealed my ruling and the Fourth Circuit has stayed the arbitration pending the appeal.

to hold negotiating sessions. The last such session was held on August 22, 1990. A bargaining impasse was then reached, and the Union went on strike.

The owner and president of T & G is Paul Gordon. Gordon also owns Beta Construction Company ("Beta"), a non-union construction contractor which does work in the District of Columbia metropolitan area. The Union has been aware of Gordon's ownership of the two companies for several years. At some time prior to June 30, 1990, the Union became suspicious that T & G was transferring work to Beta in violation of a "dual shop" provision contained in Article 43 of the collective bargaining agreement. However, at the time that its suspicions first arose, the Union took no action to obtain information about the alleged work transfers or any other action to prevent further transfers. Later, in July and August, 1990, it filed three separate grievances, each relating to a single construction project, challenging T & G's assignment of sheet metal work to Beta employees. These grievances were eventually arbitrated (without T & G's participation) but the arbitrators deadlocked and no decision was reached.

On July 12, 1990, the Union submitted to T & G a "questionnaire" containing forty-four questions concerning T & G's relationship with Beta. T & G refused to answer the questions. As a result, on August 1, 1990, the Union filed an unfair labor practice charge against T & G with the National Labor Relations Board. The NLRB issued a complaint on December 17, 1990, alleging that T & G had violated the National Labor Relations Act by refusing to respond to the Union's questions and setting a hearing on the charge before an administrative law judge on August 12, 1991.

On the day of the hearing, the parties settled the questionnaire controversy in principle. T & G agreed to provide answers to most of the Union's questions. On August 29, 1991, T & G responded to those questions pursuant to the settlement agreement.[2] The following day, T & G withdrew recognition of the Union, asserting that the Union no longer represents a majority of its employees. The Union challenged the withdrawal of recognition and on January 23, 1992 filed an unfair labor practice charge on the issue of recognition.

On September 27, 1991 the Union filed the transfer of work grievance which is the subject of this action. The parties were unable to resolve the grievance and on November 25, 1991 the Union sought arbitration.[3] T & G then instituted this action.

## II.

■ As a threshold matter, T & G contends that the Union does not have standing to pursue the grievance because it has lost its status as collective bargaining representative of T & G's sheet metal workers. This contention is without merit since the grievance which the Union has filed relates to a claim which arose prior to the expiration of the collective bargaining agreement. *See, e.g., Int'l Union, United Automobile Workers Local 1369 v. Telex Computer Products, Inc.,* 816 F.2d 519, 522–23 (10th Cir.1987); *Hospital Employees, Local 1273 v. Deaton Hosp. & Medical Ctr.,* 671 F.Supp. 1049, 1050 (D.Md.1986).

■ A second preliminary issue concerns the temporal scope of the grievance. T & G contends that to the extent that the grievance is arbitrable at all (a proposition which it disputes), its outermost time limit is June 30, 1990—the express expiration date stated in the collective bargaining agreement. The Union has declined to pinpoint the last date relevant to the substance of its grievance, but states that it is entitled to seek arbitration concerning work transfers "well beyond" the June 30, 1990 date.

■ As a general rule, a grievance filed after a collective bargaining agreement expires remains arbitrable if it arose

---

**2.** The Union continues to challenge the adequacy of T & G's answers and that matter remains pending before the administrative law judge.

**3.** It is worth noting that the Union's request for arbitration included more than twice as many jobs as did its initial grievance.

while the agreement was still in effect and if it falls within the subject matter of the agreement's arbitration clause. *See Nolde Bros., Inc. v. Bakery Workers,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). However, arbitration clauses are excluded from the rule established by *NLRB v. Katz,* 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962), making it an unfair labor practice for an employer to effect unilateral changes of existing terms and conditions of employment before the parties have bargained to impasse. *See Litton Fin. Printing, Inc. v. NLRB,* —— U.S. ——, 111 S.Ct. 2215, 2221–22, 115 L.Ed.2d 177 (1991). Therefore, a party to a collective bargaining agreement may refuse to arbitrate a grievance which arises after the agreement has expired but before the parties have bargained to impasse.

As set forth above, the stated expiration date of the collective bargaining agreement between T & G and the Union was June 30, 1990. However, Article 54 of the collective bargaining agreement provides that "[i]n the event ... notice of reopening is served, this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party." It is undisputed that T & G served notice of reopening and that the parties continued to hold bargaining sessions over the terms of a new collective bargaining agreement through August 22, 1990. The parties differ as to whether these sessions are "conferences" within the meaning of Article 54. The Union contends that they are "conferences" while T & G asserts that the only "conferences" contemplated by the clause were those held between the Union and the Sheet Metal Contractors Association.

■ The Supreme Court has recently emphasized that "a party cannot be forced to 'arbitrate the arbitrability issue.'" *Litton Fin. Printing, Inc. v. NLRB,* —— U.S. ——, 111 S.Ct. 2215, 2226, 115 L.Ed.2d 177 (1991) (quoting *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 651, 106 S.Ct. 1415, 1419, 89

L.Ed.2d 648 (1986)). Relying upon that principle, T & G argues that this Court, rather than the arbitrators, should determine the meaning of the term "conferences" as used in Article 54. However, where a collective bargaining agreement so provides, questions of its construction and interpretation are ordinarily left to the arbitrators. *E.g. Nolde Bros.,* 430 U.S. at 253–54, 97 S.Ct. at 1073 (quoting *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960)). The arbitration procedure established by Article 10 of the agreement between T & G and the Union covers "grievances ... arising out of the interpretation or enforcement of this Agreement." Therefore, if I were to find a grievance otherwise arbitrable, I would be inclined to let the arbitrators decide whether the Union's arbitrable grievance extends only through June 30, 1990 or through August 22, 1990.[4] However, since *Litton* makes clear that an employer need not arbitrate a grievance which arises after the collective bargaining agreement has expired and since the latest date on which the contract can be said to have expired is August 22, 1990, any transfer of work which occurred after that date is, as a matter of law, not arbitrable.

### III.

This brings me to the question at the heart of this case: whether the Union's grievance is timely. Logically prior to that question, however, is the question of whether it is I or the arbitrators who should decide it.

### A.

■ The Union argues that timeliness is a procedural issue with which I should not wrestle. T & G contends that the issue is one for judicial determination because Article 10 of the collective bargaining agreement provides that only "valid" grievances are arbitrable and that in order "to be

---

**4.** For the same reason I would be inclined to leave for the arbitrators to decide another issued raised by T & G: whether the arbitration is barred by a provision in Article 10, § 7 of the

collective bargaining agreement that "[t]here shall be no cessation of work by strike or lockout during the pendency of the procedures provided in this Article."

valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance, or if the occurrence was not ascertainable, within thirty (30) calendar days of first knowledge of the facts giving rise to the grievance."

■ It is a well established principle of labor law that the court should determine whether the subject matter of a particular controversy is arbitrable and leave procedural questions arising out of the dispute to the arbitrator. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40, 108 S.Ct. 364, 372, 98 L.Ed.2d 286 (1987) (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964)). As the Union asserts, in applying this principle numerous courts have held that the issue of the timeliness of a grievance is for the arbitrator to decide. *See Local 406 v. Austin Co.*, 784 F.2d 1262, 1265 (5th Cir.1986); *Denhardt v. Trailways, Inc.*, 767 F.2d 687, 690 (10th Cir.1985); *Washington Hosp. Ctr. v. Service Employees Int'l Union Local 722*, 746 F.2d 1503, 1507 (D.C.Cir.1984); *Automotive, Petroleum and Allied Indus. Employees Union, Local 618 v. Town and County Ford, Inc.*, 709 F.2d 509, 512 (8th Cir.1983); *Hospital and Institutional Workers Union Local 250 v. Marshal Hale Memorial Hosp.*, 647 F.2d 38, 41 (9th Cir. 1981); *Teamsters Local 765 v. Stroehmann Bros. Co.*, 625 F.2d 1092, 1094 (3d Cir.1980).

Despite this substantial line of authority, it is not entirely clear that under the circumstances presented in this case it is within the arbitrators' authority to decide whether or not the grievance was timely filed under the terms of the collective bargaining agreement. Article 10's mandate is explicit: in order to be "valid" a grievance must be timely. Since, as stated above, "a party cannot be forced to 'arbitrate the arbitrability issue,'" *Litton Fin.*

*Printing, Inc. v. NLRB*, 111 S.Ct. at 2226, it can be argued that where, as here, timeliness is a condition precedent to arbitrability, the timeliness issue must be resolved by the courts. *See General Drivers Local Union 89 v. Moog Louisville Warehouse*, 852 F.2d 871, 872 (6th Cir.1988). Moreover, a primary reason for the rule that "procedural questions" are to be left for resolution by arbitrators is to prevent "intertwined issues of 'substance' and 'procedure' growing out of a single dispute and raising the same questions on the same facts [from being] carved up between two different forums, one deciding after the other." *John Wiley & Sons*, 376 U.S. at 557, 84 S.Ct. at 918. Here, the merits of the Union's grievance and the issue of timeliness are not factually intertwined: the former turns upon the relationship between T & G and Beta and the nature of the work performed by Beta while the latter turns upon whether T & G's refusal to respond to the Union's questionnaire justified the delay in the filing of the grievance.

### B.

■ Just as the reconciliation of conflicting principles in a particular factual context sometimes requires the exercise of sound judgment, so too does the exercise of sound judgment sometimes require the avoidance of decision on an issue which particular facts render unnecessary. I may assume, without deciding, that the Union is correct that the question whether the grievance was timely filed under Article 10 of the collective bargaining agreement should be resolved by the arbitrators.[5] Even if that is so, I find that the Union's request for arbitration is untimely because it was not made within a reasonable time after the expiration of the collective bargaining agreement between the parties.

My analysis begins with one case which merely makes my ruling possible and an-

---

5. Perhaps I should note that it is difficult to conceive that the arbitrators could find in good faith that the grievance is not time barred under Article 10. Obviously, the grievance was filed more than thirty days after the alleged work transfers and, in light of the various admissions which the Union has made, it clearly had "first knowledge" of T & G's alleged transfer of work to Beta and the relationship between the two companies at least a year and a half before the grievance was filed.

other case which on its face squarely stands against it. In *Nolde Bros., Inc. v. Bakery Workers, supra,* the Supreme Court raised but refrained from deciding the question of whether "post-termination contractual claims which ... are not asserted within a reasonable time after the contract expiration" are arbitrable. 430 U.S. at 255 n. 8, 97 S.Ct. at 1074 n. 8. In *Keystone Shipping Co. v. Masters, Mates and Pilots Pension Plan,* 671 F.Supp. 367, 374 (D.Md.1987), Judge Northrop of this Court, relying upon the general rule that timeliness is a procedural issue reserved for the arbitrator, declined to read the *Nolde* footnote as authorizing consideration of a employer's contention made by an employer that a grievance had been untimely filed. However, *Keystone* arose in a factual context far different from the present case. At issue in *Keystone* was an employer's liability for shortfall contributions to certain multi-employer/employee benefit plans which has been assessed *after* the employer had terminated its relationship with the union. Thus, unlike here, the factual issues surrounding the reasonableness of the union's delay in initiating arbitration were "intimately intertwined" with the merits of the underlying dispute. *Id.*

Numerous factors make judicial review of the timeliness question particularly appropriate here. The Union knew before the collective bargaining agreement's expiration date on June 30, 1990 that T & G and Beta were affiliated companies under the same ownership, and it also suspected before that date that T & G was transferring work to Beta in violation of the "dual shop" provision contained in the agreement. However, the Union chose not to file a general grievance concerning this alleged violation either before the June 30th expiration date had passed or before a bargaining impasse was reached on August 22, 1990. It did not file such a grievance until November 1991, more than a year later. By that time the Union had gone out on strike, a majority of T & G's workers had signed a petition stating that the Union no longer represented them and T & G had withdrawn recognition of the Union.

The Union advances as a justification for its substantial delay in filing the grievance T & G's failure to respond fully to the extensive questionnaire which the Union submitted to it on July 12, 1990 concerning its relationship with Beta. This justification rings hollow. Although the Union may not have known the details of the relationship between T & G and Beta, it admits that it knew that the two companies were owned by the same person. Indeed, it also admits that based on the information already in its possession, it had already filed three grievances relating to an alleged violation of the "dual shop" provision at three specific job sites in July and August 1990. Moreover, it could have filed a grievance concerning the alleged improper transfer of work and filed an unfair labor practice charge in connection with that grievance in the event that T & G had failed to provide adequate information concerning its relationship with Beta. *See NLRB v. Acme Industrial Co.,* 385 U.S. 432, 436–38, 87 S.Ct. 565, 568–69, 17 L.Ed.2d 495 (1967).

These facts demonstrate the Supreme Court's prescience in *Nolde Bros.* As *Nolde Bros.* holds, there is no reason why as a general rule a contractual right to arbitrate a grievance arising under a collective bargaining agreement should not survive the expiration of the agreement. On the other hand, there is no reason why this general rule should be so absolute as to permit its abuse by a party's unreasonably late invocation of the arbitration process. Here, by November 1991, when the Union filed its grievance, the relationship between the Union and T & G had undergone dramatic changes. The effect of these changes was that T & G no longer recognized the Union as the bargaining representative for its employees. The Union has, as is its right, challenged T & G's action in this regard before the NLRB, and in due course the merits of that controversy will be decided. However, substantial time having passed and significant intervening events having occurred, it would be entirely inappropriate to allow the Union to retaliate against T & G for having with-

drawn recognition or to give the Union leverage in the representational dispute by permitting it to arbitrate a stale claim which it could have grieved before or soon after negotiations over a new agreement had failed.

*Hotel and Restaurant Employees, Local 703 v. Williams,* 752 F.2d 1476, 1479 (9th Cir.1985) and *Federated Metals Corp. v. United Steelworkers,* 648 F.2d 856, 862 (3rd Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981) support my conclusion. In those cases the Ninth Circuit and the Third Circuit read *Nolde Bros.* as permitting them to inquire into the reasonableness of the delay in seeking arbitration. Although the court in neither case found that the delay was unreasonable, in each case the grievance was filed shortly after a bargaining impasse had been declared.

This case does not turn upon any sweeping pronouncement of law. As a general rule a contractual right to arbitrate survives the expiration of the collective bargaining agreement which creates it as long as the grievance sought to be arbitrated arises before the expiration of the contract. Likewise, courts certainly should not routinely hold that requests for arbitration have been unreasonably delayed and, indeed, may perhaps leave that decision to the arbitrator if the facts relating to the delay are intertwined with the merits of the underlying dispute. However, as the Supreme Court has recently stated, "[t]he object of an arbitration clause is to implement a contract, not to transcend it." *Litton Fin. Printing, Inc. v. NLRB,* 111 S.Ct. at 2225. Here, the question of the reasonableness of the Union's delay in filing the grievance depends upon factors outside of the collective bargaining agreement itself, and that question is therefore well beyond the purview of the arbitrators to decide. For the reasons which I have stated, I find the delay to be unreasonable and will therefore enter judgment in favor of T & G.

## ORDER

For the reasons stated in the memorandum entered herein, it is, this 2nd day of March 1992

ORDERED

1. Defendant's motion for summary judgment is denied;

2. Plaintiff's motion for summary judgment is granted; and

3. It is hereby declared that the grievance which is the subject of this action is not arbitrable and defendant is enjoined from pursuing arbitration of that grievance.