INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AIR TOOL LODGE CO. 969, AFL–CIO, Plaintiff,

v.

INDRESCO, INC.—INDUSTRIAL TOOL DIVISION, Defendants.

Civ. A. No. H–94–1028.

United States District Court, S.D. Texas.

July 17, 1995.

Patrick M. Flynn, Houston, TX, for plaintiff.

Raymond L. Kalmans, Neel Hooper & Kalmans, Houston, TX, for defendants.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is Plaintiff International Association of Machinists and Aerospace Workers, Air Tool Lodge Co. 969, AFL–CIO's ("Union") Motion for Summary

Judgment (# 12). The Union seeks to compel arbitration between the Union and Defendant Indresco, Inc.—Industrial Tool Division ("Indresco") over the discharge of a former employee of Indresco.

Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that the Union's motion for summary judgment should be granted.

## I. *Background.*

Indresco is a Texas corporation that manufactures pneumatic hand tools, primarily for use in the automobile and aircraft industries. Indresco has a manufacturing facility in Houston, Texas, where it employs hourly workers who are covered by a collective bargaining agreement between Indresco and the Union. Indresco is an employer within the meaning of the Labor Management Relations Act ("LMRA") engaged in interstate commerce or in an industry affecting commerce. The Union is a labor organization within the meaning of the LMRA, existing for the purposes of representing employees in connection with wages, hours, and other terms and conditions of employment in negotiations with their employers.

In February 1991, Indresco terminated Eric Scott ("Scott"), an employee covered by the collective bargaining agreement with the Union. Scott was terminated for an alleged violation of shop rules and regulations involving purported misrepresentations of fact about the machine on which he was working in order to secure a more favorable temporary time in which to perform his duties. The Union filed a grievance protesting the discharge, and the grievance went to arbitration. On August 21, 1992, the arbitrator, John F. Caraway, sustained Scott's grievance and ordered Indresco to reinstate Scott with the payment of back wages and the restoration of seniority benefits. Specifically, the award states that Indresco "shall pay Mr. Scott back wages from the date of his discharge throug (sic) the date of his reinstatement." The award also states that Indresco "shall deduct earnings received by Mr. Scott from other employment, as well as deduct any unemployment compensation benefits received by Mr. Scott."

Scott returned to work at Indresco on September 2, 1992, at which time John D. Kennedy ("Kennedy"), Industrial Relations Manager for Indresco, requested information regarding Scott's interim earnings. This information was needed to calculate Scott's back pay as ordered in the arbitration award. On September 23, 1992, Indresco presented Scott with a back pay calculation, an affidavit for Scott's signature, and a check in the amount of $27,763.28 for back pay. Scott and the Union representative reviewed these documents and subsequently notified Indresco that the documents were correct. Scott accepted the check and signed an affidavit before a notary public on September 24, 1992. The affidavit recited the pay period dates of February 18, 1991 to September 1, 1992, specified the total earnings reported by Scott for that period, and set $27,763.28 as the amount of the full and final settlement of the arbitration award. Later that day, Indresco received information from the Texas Employment Commission ("TEC") documenting Scott's receipt of unemployment compensation. After Kennedy compared the report from the TEC to the benefits claimed by Scott, he determined that Scott had understated his unemployment benefits by a total of $693.00.

On September 25, 1992, Kennedy, Mark Ideus, Manager of Material and Production Operations, and Deborah A. Pantalion, Benefits and Labor Relations Supervisor, met with the Union Shop Committee. The Union Shop Committee was advised of Scott's alleged falsification of his reported income and that Indresco intended to suspend Scott. After this meeting, Scott was suspended from his employment at Indresco for dishonesty in underreporting his unemployment compensation. In accordance with the procedures set forth in the collective bargaining agreement, a hearing was held on October 5, 1992, and following that hearing, Scott's suspension was converted to a discharge. The Union subsequently filed a grievance over the second discharge of Scott on October 8, 1992. A Step 3 meeting was held on the grievance, after which Indresco notified the Union of its

decision to deny Scott's grievance. The Union was dissatisfied with Indresco's 3rd Step answer and, on October 23, 1992, notified Indresco of its intention to take Scott's grievance to arbitration.

Indresco has attempted to collect the money allegedly overpaid to Scott, but it has been unsuccessful. On February 19, 1993, the Union wrote Indresco, noting that Scott's arbitration was pending and advising Indresco, for the first time, that one of the issues to be presented to the arbitrator was the dates that Indresco had used in calculating Scott's prior back pay award. Indresco declined to include this issue in the arbitration, claiming that neither Scott nor the Union had filed a grievance disputing the date used by Indresco to calculate the back pay award and observing that any subsequent grievance on this issue would be untimely under the provisions of the collective bargaining agreement.

After Indresco refused to proceed with arbitration on the issue of whether the correct dates were used to compute Scott's back pay, the Union filed an unfair labor practice charge with the Regional Office of the National Labor Relations Board ("NLRB"). On October 20, 1993, after an investigation, the NLRB concluded that "further proceedings on the charge are not warranted," and the NLRB refused to issue a complaint in the matter.

The Union initiated this action on March 29, 1994, seeking to compel arbitration, alleging that Indresco's termination of Scott violated the terms of the collective bargaining agreement.

II. *Analysis.*

A. *Arbitration Of the Discharge Grievance.*

▆▆▆ In 1960, the United States Supreme Court established four fundamental principles of arbitration in a series of cases known as the *Steelworkers Trilogy. United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of Am. v. Amer-*

*ican Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). The first principle is that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *AT & T Tech., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting *Warrior & Gulf Navigation Co.,* 363 U.S. at 582, 80 S.Ct. at 1353). The second principle is that arbitrability of a grievance is an issue for judicial determination. *AT & T Tech., Inc.,* 475 U.S. at 649, 106 S.Ct. at 1418. Third, in deciding the arbitrability issue, a court is not to rule on the merits of the grievance. *Id.* at 649–50, 106 S.Ct. at 1419. Fourth, the existence of an arbitration clause in the collective bargaining agreement raises a presumption of arbitrability. *Id.* at 650, 106 S.Ct. at 1419. In general, the *Steelworkers Trilogy* established arbitration as the favored method of resolving labor disputes where collective bargaining agreements are in force. *Enterprise Wheel & Car Corp.,* 363 U.S. at 594, 80 S.Ct. at 1359; *Warrior & Gulf Navigation Co.,* 363 U.S. at 578, 80 S.Ct. at 1350; *American Mfg. Co.,* 363 U.S. at 568, 80 S.Ct. at 1346.

In the instant case, the Union contends that Indresco has refused to arbitrate the discharge grievance on the grounds that Scott has not reimbursed the company the $693.00 and because there was no quorum when the Union membership voted to take the matter to arbitration. The Union points out that there is no language in the collective bargaining agreement which excludes any particular type of discharge grievance from arbitration. The Union further asserts that the grievance arbitration clause is broad enough to cover not only Scott's discharge grievance but also the issue of the alleged excess back pay received by Scott. The Union claims that the purported excess back wages led to Scott's discharge and that this particular grievance falls under Article XVIII, ¶ A of the collective bargaining agreement which states that "[g]rievances not satisfactorily settled in the Grievance Procedure shall, in the absence of mutual agreement to the contrary, be submitted to an arbitrator to be appointed by mutual agreement of the par-

ties hereto." Moreover, the Union contends that Indresco cannot point to any portion of the agreement that puts Scott's grievance outside the arbitration provision. The Union also observes that the mere existence of the parties' collective bargaining agreement warrants a presumption of the arbitrability of the grievances.

According to Indresco's opposition to the Union's motion, Indresco has not refused to arbitrate Scott's discharge grievance as presented on October 8, 1992. Instead, Indresco has declined to arbitrate the issue of the proper dates to be used in the calculation of Scott's initial back pay award because the issue was not timely and properly raised through the grievance procedure. Indresco contends that, although it has agreed contractually to arbitrate grievances, the issue of the dates used to calculate Scott's back pay is outside the arbitration provision because this issue was not timely and properly raised as a grievance. Indresco points out that under Article XVII, ¶ B(4) of the collective bargaining agreement, a grievance must be filed within seven working days of the occurrence giving rise to the grievance and asserts that this section precludes Scott's inclusion of the issue of the back pay dates in the arbitration proceeding. Here, the check for Scott's back wages was issued on September 24, 1992, and it was not until nearly five months later, on February 19, 1993, that the issue of incorrect dates was raised as a matter for arbitration. Indresco claims that because the date issue was not timely raised, it is therefore not arbitrable. In addition, Indresco claims that this issue was never part of Scott's October 8, 1992 discharge grievance until long after the seven-day period had expired.

■ Because arbitration is a matter of contract, "[a] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Warrior & Gulf Navigation Co.,* 363 U.S. at 582, 80 S.Ct. at 1352; *American Mfg. Co.,* 363 U.S. at 570–71, 80 S.Ct. at 1364 (Brennan, J., concurring). Guided by the principles of the *Steelworkers Trilogy,* this court can only decide whether the grievance is the proper subject of arbitration between the Union and Indresco and whether the parties have agreed to arbitrate the particular grievance. *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546–47, 84 S.Ct. 909, 912–13, 11 L.Ed.2d 898 (1964); *Warrior & Gulf Navigation Co.,* 363 U.S. at 582–83, 80 S.Ct. at 1353. When a court is faced with a question of arbitrability, it "need only decide whether the grievance before it is subject to arbitration." *Oil, Chem., & Atomic Workers Int'l Union v. Phillips 66 Co.,* 976 F.2d 277, 278 (5th Cir.1992) (citing *American Mfg. Co.,* 363 U.S. at 567–68, 80 S.Ct. at 1346). "[W]hether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." *John Wiley & Sons, Inc.,* 376 U.S. at 547, 84 S.Ct. at 913 (quoting *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962)); *see also Oil, Chem., & Atomic Workers' Int'l. Union v. Shell Oil Co.,* 5 F.3d 960, 961 (5th Cir.1993). "The federal court ... is to decide *only* whether the arbitration clause in the agreement is 'susceptible of an interpretation that covers the asserted dispute.'" *United Steelworkers of Am. v. ASARCO, Inc.,* 970 F.2d 1448, 1450 (5th Cir.1992) (emphasis in the original) (citing *Warrior & Gulf Navigation Co.,* 363 U.S. at 582–83, 80 S.Ct. at 1353).

■ Article XIX, ¶ A(1) of the collective bargaining agreement states that "the Company (Indresco) agrees that an employee shall not be preemptorily (sic) discharged." Because the collective bargaining agreement allows termination only for "just cause," the issue of Scott's discharge is a proper subject matter for arbitration in this case. Under broad arbitration clauses such as that at issue in this case, the law is well established that grievances are presumed to be arbitrable unless there is specific evidence that the parties intended to exclude the matter from the grievance procedure. *AT & T Tech., Inc.,* 475 U.S. at 650, 106 S.Ct. at 1419 (citing *Warrior & Gulf Navigation Co.,* 363 U.S. at 582–83, 80 S.Ct. at 1353); *District 37 of Int'l Ass'n of Machinists & Aerospace Workers v. Lockheed Eng'g & Mgmt. Serv. Co., Inc.,* 897 F.2d 768, 770–71 (5th Cir.1990); *see also Shell Oil Co.,* 5 F.3d at 961–62. In the

instant case, the collective bargaining agreement covers discharge grievances such as the one filed by the Union on Scott's behalf on October 8, 1992. Furthermore, there is no specific evidence which indicates that this matter was intended to be excluded from the grievance procedure or which rebuts the presumption of arbitrability of the grievance. Hence, the court concludes that Scott's discharge grievance, which subsumes the issue of whether he must repay the $693.00, is arbitrable.

### B. *Dates Used for Back Pay Calculation.*

 While Indresco's contention that it cannot be compelled to arbitrate the issue concerning the dates used for the calculation of back pay due to Scott and the Union's failure to comply with the express terms of the grievance procedure has some facial appeal, a review of Supreme Court and Fifth Circuit precedent reveals that such procedural failings do not excuse Indresco from arbitrating the issue. Indresco does not dispute that if presented in the proper format and in a timely manner, the issue would have been a proper subject for a grievance and, ultimately, for arbitration, if no resolution had been reached in the course of the grievance procedure. In fact, in its opposition to the Union's motion for summary judgment, Indresco states, "Furthermore, they could have filed a grievance under the collective bargaining agreement regarding the amount due."

 It is well established that "[o]nce it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *John Wiley & Sons, Inc.,* 376 U.S. at 557, 84 S.Ct. at 918; *Smith Barney Shearson, Inc. v. Boone,* 47 F.3d 750, 753 (5th Cir.1995); *Local No. 406, Int'l Union of Operating Engs. v. Austin Co.,* 784 F.2d 1262, 1265 (5th Cir.1986). Specifically, "[q]uestions of timeliness are ones of procedural, not substantive, arbitrability," which "should be decided by an arbitrator if the underlying substantive claim is arbitrable." *Oil, Chem. & Atomic Workers' Int'l, Local 4–447 v. Chevron Chem. Co.,* 815 F.2d 338, 341 (5th Cir.

1987); *accord Smith Barney Shearson, Inc.,* 47 F.3d at 754; *Austin Co.,* 784 F.2d at 1264–65.

In *John Wiley & Sons, Inc.,* the Supreme Court posited a rare exception in which a court could decide issues of procedural arbitrability such as the timeliness of grievances. 376 U.S. at 557–58, 84 S.Ct. at 918. The Court stated that a court "could deny arbitration only if it could confidently be said not only that a claim was strictly 'procedural,' ... but also that it should operate to bar arbitration altogether...." *Id.; Smith Barney Shearson, Inc.,* 47 F.3d at 754; *Chevron Chem. Co.,* 815 F.2d at 341. Here, the court cannot conclude that the procedural requirements cited by Indresco would absolutely bar arbitration, as confusion over the dates for which back pay was due could also create confusion as to the relevant time period for reporting the receipt of unemployment compensation. Moreover, Indresco's approach, in which the court would initially determine whether procedural deficiencies barred arbitration, would inevitably lead to delay in the determination of the merits of the grievance, as it has in the case at bar. *See John Wiley & Sons, Inc.,* 376 U.S. at 558, 84 S.Ct. at 918. This would "eliminate the prospect of a speedy arbitrated settlement of the dispute, to the disadvantage of the parties (who, in addition, will have to bear increased costs) and contrary to the aims of national labor policy." *Id.* As the Supreme Court observed, "it best accords with the usual purposes of an arbitration clause and with the policy behind federal labor law to regard procedural disagreements not as separate disputes but as aspects of the dispute which called the grievance procedures into play." *Id.*

In this situation, the issue of whether the requirements of the grievance and arbitration procedure have been followed with respect to the dispute concerning the dates selected for the calculation of back pay is more properly before an arbitrator than before a federal court. *Austin Co.,* 784 F.2d at 1265. Thus, the court declines to foreclose arbitration of this issue on procedural grounds.

## C. *Attorney's Fees.*

The Union has pled for the recovery of attorney's fees from Indresco. The Union has the burden of proving its entitlement to an award of attorney's fees in this case. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 720 (5th Cir.1974). When faced with awarding attorney's fees to a prevailing party, the court considers the factors outlined in *Johnson. Id.* at 717–19. These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "desirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*

Here, the Union's attorney, Patrick M. Flynn ("Flynn"), submitted an affidavit asserting that he expended fourteen hours on this matter preparing the complaint, participating in telephone conferences, preparing the motion for summary judgment and supporting affidavits, researching the law, and preparing a reply brief.

While the Union's counsel is highly qualified, this type of case did not require his level of expertise. The questions presented were not particularly novel or difficult, nor were advanced legal skills required. Moreover, according to Flynn's supplemental attorney's fees affidavit, "because of the nature and length of the professional relationship between the undersigned counsel and the International Association of Machinist and Aerospace Workers and its various local unions, the client has been billed at the rate of $100 per hour." Although Flynn's services reasonably may be worth $150.00 per hour, as reflected by his curriculum vita, under these circumstances, controlling Fifth Circuit authority precludes the Union from collecting any amount greater than $1,400.00 ($100.00 × 14 hours) for attorney's fees. As the court stated in Johnson, "In no event … should the litigant be awarded a fee greater than he is contractually bound to pay." 488 F.2d at 718.

Therefore, after considering the factors set forth in *Johnson,* the court has determined that $1,400.00 is a reasonable fee for Flynn's services in this case.

## III. *Conclusion.*

There exist no outstanding issues of material fact with respect to the Union's action to compel Indresco to arbitrate Scott's discharge grievance, and the Union is entitled to judgment as a matter of law. Accordingly, the Union's Motion for Summary Judgment is granted.

The parties are to submit Scott's discharge grievance to arbitration in accordance with the terms of the collective bargaining agreement. Repayment by Scott of the disputed excess back wages of $693.00 shall not be required as a condition for submitting Scott's grievance to arbitration. The arbitrator shall determine whether procedural deficiencies bar consideration of the issue concerning the proper dates for the calculation of back pay with respect to Scott's prior arbitration award.

Indresco shall pay the Union its attorney's fees of $1,400.00 incurred in connection with this case.

IT IS SO ORDERED.