United States Court of Appeals
Fifth Circuit

**F I L E D**

May 30, 2003

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

_____

m 02-10831

_____

GENERAL WAREHOUSEMEN AND HELPERS UNION LOCAL 767,

Plaintiff-Appellant,

VERSUS

ALBERTSON'S DISTRIBUTION, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

Before SMITH and BARKSDALE, Circuit Judges, and DUPLANTIER,[*] District Judge.

JERRY E. SMITH, Circuit Judge:

General Warehousemen and Helpers Union Local 767 (the "union") appeals a summary judgment denying its request for an order to compel arbitration of a grievance by a union member against Albertson's Distribution, Inc. ("Albertson's"). We reverse and remand.

## I.

Gabe Redondo worked as a truck driver for Albertson's. Redondo belongs to the union, which is the authorized bargaining agent for certain Albertson's employees. The union and Albertson's have a collective bargaining agree-

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

ment ("CBA") that governs the terms and conditions of Redondo's employment.

During a delivery to an Albertson's grocery store on March 13, 2001, a female employee allegedly observed Redondo urinating in plain view beside the store; she reported the incident to management that day. When Redondo returned to the distribution center, he met with his shop steward and another supervisor. At the end of the meeting, Redondo was suspended pending further investigation. After the investigation, Albertson's fired Redondo on March 16.

The record contains a single grievance related to this incident, and the parties dispute when Redondo and the union presented the grievance to Albertson's. On one hand, Albertson's contends they presented it on March 13. Some evidence supports this view. Redondo dated the grievance March 13 and checked the box for "unjust suspension," not "unjust discharge." Further, Redondo's shop steward signed and dated the grievance March 13.

On the other hand, the union contends that they presented it on March 19. Other evidence supports this view. Gilbert Abalos, a union representative, noted on the grievance that the union received and sent it to Albertson's on March 19. The union's date-stamp on the grievance also reads March 19.

The union requested arbitration of the grievance, but Albertson's refused. Section 17.5 of the CBA requires that arbitration must occur within five months from the filing of a grievance, but this period "may be extended to incorporate probative delay resulting from unavailability of a [company] representative in regard to selection of an arbitrator or scheduling of an arbitration."

As required by CBA § 17.6, the union requested a list of potential arbitrators from the Federal Mediation and Conciliation Service ("FMCS"), which sent the list to William Baab, the union's counsel, and Albertson's on July 10. Baab then asked John Jansonius, Albertson's' counsel, to notify him when Jansonius was authorized to select an arbitrator. On July 24, Jansonius requested a copy of the grievance for which the union sought arbitration. Albertson's received a copy of the grievance on August 21, after the five-month arbitration period had expired. In October 2001, Jansonius responded that Albertson's refused to arbitrate because the grievance covered only the suspension, not the discharge, and the five-month arbitration period had expired.

The union sued to compel arbitration under § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a). The parties filed cross motions for summary judgment. The court granted Albertson's' motion and denied the union's, concluding that the grievance did not and could not cover the discharge, because Albertson's received it on March 13, three days before the discharge. The court therefore deemed any grievance about the discharge waived under the CBA, which requires the filing of a grievance within five days of an incident. The court did not consider Albertson's' alternative argument that the union did not timely arbitrate the grievance.

II.
We review *de novo* the denial of a motion to compel arbitration. *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1065 (5th Cir. 1998). Because the district court improperly substituted its judgment

2

for that of the arbitrator, we reverse.

"The courts' role is very limited when deciding issues of arbitrability." *Oil, Chem. & Atomic Worker's Int'l Union, Local 4-447 v. Chevron Chem. Co.*, 815 F.2d 338, 343 (5th Cir. 1987) ("*Chevron*"). The court decides only whether the parties agreed to submit the subject matter of the grievance to arbitration. *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986). Neither party, however, seriously disputes that the CBA covers suspensions and discharges.[1] For "question[s] of so-called 'procedural arbitrability,'" the arbitrator, not the court, generally decides whether the parties complied with the agreement's procedural rules. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 555 (1964). "Questions of timeliness are ones of procedural, not substantive, arbitrability." *Chevron*, 815 F.2d at 341.

This general rule in favor of the arbitrator's deciding questions of procedural arbitrability has one exception: "[A] court could deny arbitration only if it could confidently be said not only that the claim was strictly 'procedural,' . . . but also that it should operate to bar arbitration altogether." *John Wiley*, 375 U.S. at 557-58. The Court observed that "such cases are likely to be rare indeed." *Id.* at 558.

---

[1] Albertson's suggests that it did not agree to arbitrate Redondo's grievance, but this argument misunderstands the holding of *AT&T*. *AT&T* does not require the court to determine whether the parties specifically agreed to arbitrate a particular grievance; instead, the court determines whether the parties agreed to arbitrate the particular class of grievances, e.g., grievances over suspensions or discharges. *AT&T*, 475 U.S. at 648-49; *Chevron*, 815 F.2d at 340-41. Albertson's concedes that it agreed to arbitrate grievances over suspensions and discharges, which removes this case from the threshold *AT&T* inquiry.

We have interpreted this rare exception to mean that "a court will not order arbitration if 'no rational mind' could question that the parties intended for a procedural provision to preclude arbitration and that the breach of the procedural requirement was clear." *Chevron*, 815 F.2d at 342 (quoting *Rochester Tel. Corp. v. Communication Workers of Am.*, 340 F.2d 237, 239 (2d Cir. 1965)).

The parties agree that they intended the CBA's procedural rules to preclude arbitration if breached, but they vigorously contest whether the union breached them. Albertson's argues that the union breached the procedural rules in two ways: (1) The union never presented a grievance for the discharge and, even if it did, (2) it did not arbitrate the grievance within five months. The union counters that the grievance covers the discharge and that Albertson's' conduct excused its untimely arbitration.

Following *John Wiley* and *Chevron*, we do not decide for ourselves these questions of procedural arbitrability; rather, we concentrate on what a rational mind *could* decide. Because a rational mind could conclude, from the union's evidence, that it complied with the CBA's procedural rules, the district court should have entered an order to compel arbitration and let the arbitrator decide these questions.

A.

Albertson's argues, and the district court agreed, that the grievance could not possibly cover the discharge, because Albertson's had not discharged Redondo when he presented the grievance. According to this theory, Redondo presented the grievance immediately following his suspension on March 13, Albertson's did not discharge him until March 16,

and hence the grievance could not cover the discharge.

Yet, the union offered sufficient evidence to dispute this chronology. Redondo and his shop steward signed and dated the grievance on March 13, but Abalos noted on the grievance that he received it and sent it to Albertson's on March 19, three days after the discharge. The union's date-stamp of March 19 supports this view of the evidence, as does Abalos's affidavit. The union acknowledges that the grievance protests only the suspension, but argues that the grievance should be interpreted to cover the discharge, because it arose from the same incident and Albertson's received it after the discharge.

Given this disputed evidence, a rational mind could agree with the union's chronology and conclude that the grievance covers the discharge. Albertson's theory depends on its disputed chronological facts; remove those facts and the theory crumbles. Moreover, the CBA does not expressly require an employee to file separate grievances for multiple disciplinary actions based on the same alleged misconduct. A reasonable arbitrator could interpret the CBA to allow a single grievance in this situation.

Indeed, we recognized this possibility in *Ala. Power Co. v. Local Union No. 391, IBEW*, 612 F.2d 960 (5th Cir. 1980). There, the company initially suspended the employee, who filed a grievance protesting the suspension. *Id.* at 961. After the request for arbitration but before arbitration, the company increased the employee's punishment from suspension to discharge. *Id.* The union asked the arbitrator to review the discharge. *Id.* Over the company's objection, the arbitrator reviewed the discharge and entered an award

for the employee. *Id.* The district court, however, denied a motion to enforce the award, "because the [u]nion did not present the discharge grievance in accordance with contract procedures." *Id.*

We reversed, relying on *John Wiley*. *Id.* at 962-63. Though agnostic on whether the single grievance could cover both disciplinary actions, we held that "[c]onsideration of these matters is to be left to the arbitrator." *Id.* at 962. "The [c]ompany should have addressed its arguments that the proper procedures were not followed to the arbitrator, not to the courts." *Id.* at 963. Although *Alabama Power* involved enforcement of an arbitral award, its reasoning applies with equal force to a motion to compel arbitration.[2] *See Local*

---

[2] Albertson's unpersuasively attempts to distinguish *Alabama Power*. Albertson's argues that *Alabama Power* involved an ambiguous grievance, whereas this case involves an unambiguous grievance. Nothing in *Alabama Power* supports this argument. To the contrary, the cases are factually identical: Both grievances mention only the suspension, not the discharge, and therefore require an interpretation of the collective bargaining agreement.

Albertson's also cites several cases in which employees have filed multiple grievances for multiple disciplinary actions based on the same misconduct. In Albertson's' view, these cases show that "it can by no means be taken as a general rule that grievances over suspension are automatically amended when the employee is subsequently discharged." Yet, the opposite cannot be taken as a general rule either. Each collective bargaining agreement is its own document. *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 578-79 (1960). Even if these cases contradicted the reasoning of *Alabama Power*, which they do not, an arbitrator still must decide whether
(continued...)

*No. 406, Int'l Union of Operating Eng'rs v. Austin Co.*, 784 F.2d 1262, 1265 (5th Cir. 1986) (applying *Alabama Power* to a denial of a motion to compel arbitration).

As in *Alabama Power*, a rational mind could agree with the union's view of the facts and its interpretation of the CBA. Thus, the arbitrator must decide whether the grievance covers the discharge.

B.

Albertson's further argues that, even if the grievance covers the discharge, the union did not timely arbitrate the grievance. Section 17.5 of the CBA requires arbitration to occur within five months of the incident alleged in the grievance. The union concedes that arbitration did not occur within that time. Albertson's therefore contends that summary judgment was proper, because the untimely arbitration "operate[s] to bar arbitration altogether." *John Wiley*, 376 U.S. at 558.

Yet, Albertson's never acknowledges the final clause of § 17.5: "The five (5) month period may be extended to incorporate probative delay resulting from the unavailability of a [company] representative in regard to selection of an arbitrator or scheduling of an arbitration." The union avers that Albertson's was unavailable, because Jansonius refused to select an arbitrator after receiving the FMCS list on July 10, more than a month before the five-month period expired. Jansonius also refused to confirm whether he was authorized to select an arbitrator.

We cannot say confidently, as required by *John Wiley*, that this conduct does not excuse the union's untimely arbitration. Albertson's argues that the union contributed to the failure,[3] but the arbitrator must decide this factual dispute.

Moreover, *Chevron* instructs that these heavily factual disputes about the timeliness of arbitration and potential excuses should be submitted to the arbitrator. In *Chevron*, 815 F.2d at 341-42, the company argued that the union's untimely request to arbitrate completely barred arbitration. The union responded that the company's representative was unavailable based on a clause similar to § 17.5. *Id.* at 342. We concluded that "since there is a legitimate dispute as to the Union's compliance with the procedural requirements, this case does not fit within the 'rare' group of cases to which the Supreme Court spoke in *John Wiley* . . . . [T]herefore, *John Wiley* directs that the procedural questions involving the grievance should also be decided by an arbitrator." *Id.*

A rational mind could conclude that Albertson's conduct excused the union's untimely arbitration. Thus, the arbitrator, not the courts, must determine whether § 17.5 bars arbitration of the grievance.

III.

*John Wiley* and *Chevron* instruct that the courts should not decide questions of procedural arbitrability unless a rational mind could not possibly rule for the party seeking

---

(...continued)

this *particular* CBA allows a single grievance to cover multiple disciplinary actions for the same alleged misconduct.

---

[3] Albertson's contends that the union did not timely provide Jansonius with a copy of the grievance when he requested it on July 10. Perhaps not, but it must address this argument to an arbitrator, not the courts.

5

arbitration. A rational mind easily could agree with the union's view of the facts and its interpretation of the CBA.[4] "The questions presented by this case, therefore, are most properly before an arbitrator of industrial relations, not before a federal court." *Local No. 406*, 784 F.2d at 1265.

The district court improperly substituted its judgment for the arbitrator's. Thus, we REVERSE the summary judgment and REMAND "for the sole purpose of entering an order compelling arbitration." *Id.*

---

[4] We emphasize that we state no opinion on whether the grievance covered the discharge or whether Albertson's' conduct excused the union's untimely arbitration. We merely recognize that these questions of procedural arbitrability are re-served for the arbitrator, because a rational mind could rule for either the union or Albertson's. *John Wiley*, 376 U.S. at 558; *Chevron*, 815 F.2d at 341-42. And, we express no opinion on whether suspension or discharge is an appropriate punish-ment under the CBA for Redondo's alleged act. *AT&T*, 475 U.S. at 649-50 (stating that "a court is not to rule on the potential merits of the underlying claims . . . even if it appears to the court to be frivolous").