# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01622-COA

**DR. ARENIA C. MALLORY COMMUNITY HEALTH CENTER, INC.**　　　　　　　　**APPELLANT**

**v.**

**STELLANDA DAVIS-CORNELIUS**　　　　　　　　**APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/21/2014 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | LAURA FORD ROSE |
| | JESSICA IRIS MORRIS |
| ATTORNEY FOR APPELLEE: | STEVEN TODD JEFFREYS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| TRIAL COURT DISPOSITION: | DENIED MOTION TO COMPEL ARBITRATION |
| DISPOSITION: | REVERSED AND REMANDED - 04/12/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WILSON, J., FOR THE COURT:**

¶1.　The circuit court denied Dr. Arenia C. Mallory Community Health Center Inc.'s motion to compel arbitration. Its basis for doing so was the Health Center's failure to conduct arbitration proceedings within thirty to sixty days of firing its CEO, Stellanda Davis-Cornelius, as required under her employment contract's arbitration provision. But questions of timeliness and whether a party fulfilled the procedural requirements of the arbitration provision are ones of "procedural arbitrability." And questions of procedural arbitrability are for the arbitrator, not the courts, to decide.

¶2.     For this reason, we reverse the circuit court's order denying the Health Center's motion to compel arbitration.  We remand this case back to the circuit court to stay Davis-Cornelius's suit against the Health Center and compel arbitration on whether Davis-Cornelius was terminated for "cause."

## Background Facts and Procedural History

¶3.     On March 19, 2008, the chairman of the Health Center's board of directors signed a contract to employ Davis-Cornelius as its chief executive officer.  Under the contract, Davis-Cornelius would remain employed by the Health Center from July 1, 2008, until June 30, 2023, "unless terminated sooner as herein provided."[1]  The contract provided for a base starting salary of $170,000 with mandatory annual cost-of-living increases, $50,000 bonuses in certain years, and various fringe benefits.

¶4.     The board terminated Davis-Cornelius on January 22, 2014.  In its termination letter to Davis-Cornelius, the board stated that "financial differences make it impossible to continue to pay you."  In March 2014, Davis-Cornelius demanded that the Health Center continue to pay her salary pursuant to her contract.  In response, the board asserted through its attorneys that it had never seen the "alleged employment contract" prior to receiving Davis-Cornelius's demand letter.  The board claimed that it had been presented with the contract's signature page but had never reviewed, discussed, or negotiated the contract's

---

[1] Another provision of the contract stated, "On each anniversary date of this agreement, the terms and conditions contained herein shall automatically renew for an additional five (5) year term."

other terms. Accordingly, the board claimed that the alleged contract was not valid.

¶5.     The board further stated that Davis-Cornelius was properly fired for cause on grounds of which she was well aware. These included allegedly misappropriating funds, falsifying board minutes to reflect board approval of decisions never brought to its attention, violations of federal regulations, failing to pay payroll taxes, violation of the board's nepotism policy, and other issues. The board stated that the federal Health Resources Services Administration (HRSA) had "made [Davis-Cornelius] aware of these and numerous other issues" during a site visit and through a subsequent report. The board claimed that Davis-Cornelius's conduct had jeopardized the Health Center's federal funding and existence. The board closed its response by stating: "Because [Davis-Cornelius] ha[d] failed to do so, pursuant to Section VI of the alleged contract, the Center is initiating arbitration without waiving any of its defenses to [her] contract claims."

¶6.     Under the terms of the employment contract attached to her complaint, the Health Center could terminate Davis-Cornelius for any reason on ninety days' notice. But if it did so, it had to pay her salary "until the total years of contract is ended with no exceptions." The contract also provided that the Health Center could terminate Davis-Cornelius "for cause,"[2]

---

[2] The contract defines "cause" as "negligence or misconduct as shall constitute, as a matter of law, the failure of the Executive Director/Chief Executive Officer to discharge in good faith the obligations and responsibilities as set forth hereinafter above, to engage in conduct of an unethical or illegal nature which adversely effects [sic] the operations of the Center or conducts [sic] gross and reckless as to evidence a disregard for the integrity, reputation and best interest of the Center."

in which case it would not have to continue to pay her. Section VI(D) provided that if the Health Center fired Davis-Cornelius for cause,

> an arbitration panel shall be formed immediately upon the termination of the Executive Director/Chief Executive Officer to determine whether or not there was "Cause" for the discharge by the Board of Directors.
>
> The panel shall consist of the following:
>
> (1) A person selected by the Executive Director/Chief Executive Officer.
>
> (2) A person selected by the Board of Directors.
>
> (3) A third person selected by the selected [sic] as a result of subparagraph D(l) and D(2).
>
> The panel of arbitrators shall begin their deliberations promptly and shall notify both the Executive Director/Chief Executive Officer and Board of Directors of the time and place at which the Executive Director/Chief Executive Officer and Board Chairman will have opportunity to be heard on the issue of "Cause[.]" The Executive Director/Chief Executive Officer and the panel must reach a decision within thirty (30) days from the date on which he/she is terminated and the panel must reach a decision within sixty (60) days of said date.

¶7. When Davis-Cornelius was fired, an arbitration panel was not immediately formed. Instead, more than sixty days later, on March 8, 2014, she sued the Health Center in circuit court. In her complaint, Davis-Cornelius alleged she was not terminated for cause. Thus, as she saw it, she was entitled to her salary for the almost decade remaining of the contract (totaling more than $1,000,000), and for her other alleged unpaid benefits.

¶8. The Health Center responded by filing a motion to compel arbitration. While the Health Center contests the validity of some of the contract's terms, the arbitration provision

4

was not one of them.[3]  The Health Center argued Davis-Cornelius's claim that she was not terminated for "cause" fell within the scope of this arbitration provision.  So it was for the arbitration panel, not the circuit court, to decide.

¶9.    The circuit court denied the Health Center's motion.  The court employed the two-prong inquiry for deciding arbitrability, *see East Ford Inc. v. Taylor*, 826 So. 2d 709, 713 (¶¶9-10) (Miss. 2002), and found that the Health Center's motion failed under the first prong. "The first prong has two considerations: (1) whether there is a valid arbitration agreement and (2) whether the parties' dispute is within the scope of the arbitration agreement." *Id.* at (¶9).  According to the circuit judge, while a valid arbitration agreement existed, this "agreement [was] limited to the determination of 'Cause' for termination only to be conducted promptly and immediately within 30-60 days of termination."  Therefore, the agreement "does not encompass the claims pursued by [Davis-Cornelius]."

¶10.   The Health Center timely appealed the circuit court's order.  *See Tupelo Auto Sales Ltd. v. Scott*, 844 So. 2d 1167, 1170 (¶10) (Miss. 2003) (holding that "an appeal may be taken

---

[3] As noted above, in its initial response to a Davis-Cornelius's pre-suit demand letter, the Health Center contended that the employment contract was not valid.  But by the time its motion to compel arbitration was heard, the Health Center had acknowledged that one of its board members had signed the contract and that at least some of its provisions, including the arbitration clause, were enforceable. Counsel for the Health Center noted that the agreement contained a severabilty clause, so any invalid terms could be severed and the remainder of the agreement enforced.  The Health Center vigorously maintains that not all the provisions in the contract are valid and enforceable.  In a footnote in their opening brief on appeal, the Health Center states: "For purposes limited to [its motion to compel arbitration], [the Health Center] does not contest the validity of the employment contract."

from an order denying a motion to compel arbitration").

## Discussion

¶11.  We review the denial of a motion to compel arbitration de novo. *Id.* at 1169 (¶5). And our de novo review leads us to the opposite conclusion of the circuit court. We find the *substance* of Davis-Cornelius's claim against the Health Center fell within the scope of the arbitration agreement. And any issue of timeliness or failure to comply with the *procedural* requirements of the arbitration agreement was for the arbitration panel, not the circuit court, to decide.

### I.      Validity of the Arbitration Agreement

¶12.  Before we discuss the scope of the arbitration agreement, we must first address its validity.

¶13.  The circuit court found a valid arbitration agreement existed, but in her brief on appeal, Davis-Cornelius accuses the Health Center of taking an inconsistent position about the validity of the employment contract. According to Davis-Cornelius, the Health Center is trying "to have its cake and eat it too" by denying the validity of the employment contract but stipulating that, should such a contract exist, its arbitration agreement is valid. In response, the Health Center argues that it may enforce the arbitration provision without also conceding that all terms in the employment contract are enforceable.

¶14.  It is true that "where the 'very existence of a contract' containing the relevant arbitration agreement is called into question," the courts—not the arbitrators—"have

6

authority and responsibility to decide the matter." *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (quoting *Will-Drill Res. Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003)). This is because, if "no contract ever existed, . . . by proxy, . . . no agreement to arbitrate was ever concluded. The arbitrator consequently would have no authority to decide anything." *Banc One*, 367 F.3d at 429-30. But here, neither side argues the employment contract never *existed*—especially not Davis-Cornelius, whose million-dollar lawsuit depends on the contract's existence.

¶15. Instead, what the Health Center challenges is the *enforceability* of the contract. And when a party does "not challenge the existence of a contract, but rather attacks the enforceability of the agreement alleging that the contract is void ab initio or voidable[,] . . . [s]uch a scenario calls for application of the severability doctrine contained in *Prima Paint* [*Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 403-04 (1967)]." *Banc One*, 367 F.3d at 430. "Under this approach, 'only if the arbitration clause is attacked on an independent basis can the court decide the dispute; otherwise, general attacks on the agreement are for the arbitrator.'" *Id.* (quoting *Will-Drill*, 352 F.3d at 218).

¶16. Under *Prima Paint*, an arbitration clause is deemed "separable" from the contract in which it is contained. *Prima Paint*, 388 U.S. at 402. Therefore, a claim that the contract as a whole was fraudulently induced is subject to arbitration unless there is a "claim . . . that fraud was direct to the arbitration clause itself." *Id.* Likewise, a claim that an entire contract is illegal and void ab initio must be arbitrated when there is no such claim directed to the

7

arbitration agreement specifically. *See Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440, 442-46 (2006). This rule is "a matter of substantive federal arbitration law" and thus "applies in state as well as federal courts." *Id.* at 445-46.

¶17. Neither party has lodged an independent attack on the arbitration clause itself. Thus, any issues surrounding the contract's enforceability do not preclude arbitration; such issues are for the arbitrators to decide.

## II. Scope of the Arbitration Agreement

¶18. We next consider whether the parties' dispute falls within the scope of the arbitration clause. *East Ford*, 826 So. 2d at 713 (¶9).

¶19. The arbitration clause was not broad. It did not encompass "any and all disputes" between Davis-Cornelius and the Health Center. Rather, it covered one issue—whether Davis-Cornelius was terminated for "cause." But narrow as the arbitration clause may be, this is the exact issue that forms the basis of Davis-Cornelius's lawsuit against the Health Center. Therefore, the underlying substance of her claim falls within the scope of the arbitration clause.

¶20. The circuit court held that the dispute fell outside the scope of the arbitration agreement because the clause *temporally* limited arbitration to the sixty-day window following Davis-Cornelius's termination. However, such claims must be decided by an arbitrator, not a court. The Supreme Court made this clear in *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002). *Howsam* addressed a rule of the former National

8

Association of Securities Dealers (NASD), which the parties' agreement incorporated by reference, "that no dispute 'shall be eligible for submission to arbitration . . . where six (6) years have elapsed from the occurrence or event giving rise to the . . . dispute." *Id.* at 81-82 (quoting NASD Code of Arbitration Procedure § 10304 (1984)). More specifically, the Court addressed who—a court or an arbitrator—should decide whether a claim was initiated within the time limit. The Court held that ""'procedural" questions [of arbitrability] which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide." *Id.* at 84 (quoting *John Wiley & Sons Inc. v. Livingston*, 376 U.S. 543, 557 (1964)). Thus, "the presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). The Court continued, "in the absence of an agreement to the contrary, . . . issues of procedural arbitrability, i.e., whether prerequisites such as *time limits* . . . and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." *Id.* at 85 (quoting Revised Uniform Arbitration Act of 2000, § 6, comment 2). The time limit at issue in this case is not meaningfully distinguishable from the one at issue in *Howsam*; therefore, Davis-Cornelius's contention that the Health Center failed to comply with it must be decided by an arbitration panel, not the circuit court.

¶21. "This general rule in favor of the arbitrator's deciding questions of procedural arbitrability has one exception: '[A] court could deny arbitration only if it could confidently

9

be said not only that the claim was strictly 'procedural,' but also that it should operate to bar arbitration altogether." *Gen. Warehousemen & Helpers Union Local 767 v. Albertson's Distrib. Inc.*, 331 F.3d 485, 488 (5th Cir. 2003) (quoting *John Wiley*, 376 U.S. at 557-58). But "such cases are likely to be rare indeed." *John Wiley*, 376 U.S. at 558. The Fifth Circuit has "interpreted this rare exception to mean that 'a court will not order arbitration if 'no rational mind' could question that the parties intended for a procedural provision to preclude arbitration and that the breach of the procedural requirement was clear.'" *Albertson's Distribution*, 331 F.3d at 488 (quoting *Oil, Chem. & Atomic Worker's Int'l Union, Local 4–447 v. Chevron Chem. Co.*, 815 F.2d 338, 342 (5th Cir. 1987)).

¶22. Here, we cannot say that compliance with the procedures of the arbitration provision in Davis-Cornelius's employment contract is an issue that fits the "rare" exception. The circuit court's interpretation—that the failure to strictly comply with the time period precludes arbitration—is reasonable. But a rational mind could also conclude that the time provision is not an absolute bar to arbitration because, as the Health Center argues, it had no reason to suspect Davis-Cornelius would contest that her termination was "for cause"; because Davis-Cornelius also failed to initiate arbitration; or for some other reason. The Health Center asserts it raised the issue of arbitration as soon as it learned Davis-Cornelius intended to contest that it had cause to fire her.

¶23. It is not our role to decide if the Health Center in fact breached the procedural requirements of the arbitration provision. Because we cannot confidently say that such a

breach should operate to bar arbitration altogether, we find this issue should be decided by the arbitration panel, not the court.

¶24. "The courts' role is very limited when deciding issues of arbitrability." *Albertson's Distribution*, 331 F.3d at 487. "The court decides only whether the parties agreed to submit the *subject matter* of the grievance to arbitration." *Id.* (emphasis added) (citing *AT&T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). The subject matter of Davis-Cornelius's dispute with her former employer falls within the scope of the arbitration provision in her employment contract.[4] Therefore, we reverse the order of the circuit court and remand this case to the circuit court to compel arbitration.

¶25. **THE JUDGMENT OF THE HOLMES COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR THE CIRCUIT COURT TO STAY PROCEEDINGS AND COMPEL ARBITRATION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR, JAMES AND GREENLEE, JJ., CONCUR. IRVING, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

---

[4] The circuit court did not consider, and neither side has argued the second prong of arbitration analysis comes into play. The second prong encompasses "whether legal constraints external to the parties' agreement foreclosed arbitration of those claims." *East Ford*, 826 So. 2d at 713 (¶10) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 626 (1985)). Under this prong, "applicable contract defenses available under state contract law such as fraud, duress, and unconscionability may be asserted to invalidate the arbitration agreement without offending the Federal Arbitration Act." *Id.* (citing *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 686 (1996)).

11