# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00802-COA

**MLD COMMUNITY DEVELOPMENT, LLC**                    APPELLANT

**v.**

**DR. JERRY WAYNE DILLON D/B/A JERKETT**                    APPELLEE
**ENTERPRISES, LLC, JERKETT, EAGLES NEST**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/08/2022 |
| TRIAL JUDGE: | HON. DEBBRA K. HALFORD |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JARROD DILLON MUMFORD |
| ATTORNEY FOR APPELLEE: | JOHN JAMIL McNEIL |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED AND REMANDED - 11/28/2023 |
| MOTION FOR REHEARING FILED: | |

### BEFORE WILSON, P.J., McDONALD AND LAWRENCE, JJ.

### McDONALD, J., FOR THE COURT:

¶1.     This case deals with a land contract dispute in Pike County.  MLD Community Development (MLD), a limited liability company comprised of brothers and sisters of the appellee Dr. Jerry Dillon, brought suit against Dillon in the Pike County Chancery Court to enjoin his use of land where a lodge-style resort "Eagle Lodge" is located.  After the chancery court entered an order on March 7, 2022, compelling arbitration, MLD filed subsequent motions to compel pre-arbitration meetings, as required by the land contract.  The chancery court granted one of these motions on July 7, 2022, but on August 8, 2022, the chancery court entered its third and final order reiterating that the court had already compelled arbitration, rescinding its July 7, 2022 order concerning pre-arbitration meetings

for lack of both subject-matter and personal jurisdiction, and dismissing the case. MLD appeals, raising the sole issue of whether the chancery court had subject matter jurisdiction over the land-contract dispute.

### FACTS AND PROCEDURAL BACKGROUND

¶2. Approximately twenty-three years ago, Dillon, who lived in Illinois, acquired thirty-four acres of land in Pike County, Mississippi, from his father and mother, Monroe and Lavern Dillon. Dillon developed the land and its seven-acre lake into a lodge-style resort that he dubbed "Eagle Lodge."[1] Dillon secured a mortgage on the property in order to finance the development of Eagle Lodge. However, in 2005, Hurricane Katrina damaged the property and wracked the tourism industry on the Mississippi Gulf Coast for years, causing Dillon's property to lose business and visitors.

¶3. In late 2012, Dillon defaulted on the mortgage, and the bank began foreclosure proceedings. At this point, Dillon's siblings noticed the foreclosure proceedings in the local newspaper. In early 2013, they formed MLD Community Development LLC (dedicated to the siblings' parents Monroe and Lavern Dillon) to save the land that held a special place in their family heritage.[2] On November 6, 2013, Dillon signed a warranty deed conveying the

---

[1] Dillon also is the sole proprietor of the d/b/a entities listed on the complaint and appellant's brief as defendants/appellees: "Jerkett Enterprises, LLC," "Jerkett," and "Eagles Nest."

[2] MLD Community Development, LLC members included: Dr. Tracey Dillon (President); Wesley Dillon (Vice-President); Brenda Dillon Holmes (Treasurer); Betty Dillon (Secretary); Eva Bray (Assistant Secretary); Edna Owens; Beverly Gordon; Monroe Dillon; Vikki Dillon Mumford; and Melvin Holmes, Jr. The listed members and officers all were stakeholders in the LLC and financially contributed to preventing the foreclosure sale of the Eagle Lodge property.

property to MLD, which in turn refinanced and began to pay off the mortgage, preventing foreclosure.

¶4. Over three years later, on December 15, 2017, Brenda Holmes (representing MLD) entered into the "Eagle Lodge Loan Assumption Agreement" with Dillon for the "sole purpose of retiring loan # 4994646 held at First Bank, MS located in McComb, Mississippi in exchange for the ownership of the 34 aces and lodge located at 1086 J.J. Carters Road, Magnolia, Mississippi 39652." The terms of the loan assumption agreement included:

> Jerry Dillon agrees to assume referenced loan and exclusively occupy and take possession of the premises of Eagle's Lodge and accompanying 34 acres throughout the terms of the assumption agreement under the following conditions: $20,000.00 in increments of $10,000.00 to be satisfied within or by the end of December 2018; promptly provide funds to satisfy the monthly note; meet bank's requirement to maintain property insurance and all other expenses/taxes thereunto. As soon as practical, Jerry Dillon will pay off loan agreement held between MLD (Brenda Dillon Holmes guarantor) and First Bank MS or refinance said loan agreement relieving Brenda Dillon Holmes and her Associates of any and all liability for said loan, in addition to, relinquishing any and all ownership to said lodge and 34 acre property located at 1089[3] J.J. Carters Road to Jerry Dillon. This agreement provides all rights of ownership which includes the right to refinance said loan, or pay in full existing loan without any encumbrances from the former loan holder(s). It is further acknowledged and agreed that if said property note becomes delinquent (30 plus days past due) then this control is null and void and property reverts to former owners.

The loan assumption agreement stated that the lease period would begin on January 1, 2018, and end when the loan was paid in full or refinanced. The agreement also required Dillon to obtain any appropriate licenses for any business conducted on the property, pay all utilities,

---

[3] Despite the apparent scrivener's error, this loan assumption agreement relates to the property at 1086 J.J. Carters Road, Magnolia, Mississippi 39652 where Eagle Lodge is located, not 1089 J.J. Carters Road. Further, no one disagrees that this is the property in question.

and enter the property "as is" with the right to remodel and improve the facility as he saw fit. The contract was to be governed under Mississippi law and could only be modified in writing by both parties. Lastly, the agreement included indemnity and dispute-resolution clauses. The dispute resolution clause provided:

> Any dispute resolution will be first given an exhaustive 3 meeting minimum attempt before a third party is solicited, (An Arbitrator), by agreement to referee a resolution according to the rules of the American Arbitration Association, such proceeding to be held in Magnolia, MS. It is hereby acknowledged and agreed that arbitration shall be the final means of dispute resolution relative to this agreement.

¶5.     After several months, Dillon defaulted on the bank loan payments.[4] The bank once again started foreclosure proceedings. However, in March 2021, MLD was able to refinance the loan for a second time, and MLD once again began paying the mortgage. At this time, MLD continued as if the loan assumption agreement had become null and void because Dillon had defaulted on the mortgage. However, Dillon continued to conduct business on the property, including selling plate dinners and day-fishing passes and planning events at Eagle Lodge.

¶6.     On March 15, 2021, without MLD's knowledge or consent, Dillon executed a quitclaim deed, conveying the property to himself and signing it on behalf of MLD.

*Complaint and Process*

¶7.     On June 23, 2021, MLD filed a complaint in the Pike County Chancery Court. MLD sought a preliminary and permanent injunction directing Dillon to cease and desist any and

---

[4] The record is unclear about when the first default occurred, at some points mentioning default occurred ten months later, while other times referencing default occurring eighteen months later.

all operations at Eagle Lodge; to refrain from taking anything from the building other than personal items; to refrain from defacing the building in any way; and to obtain written permission from MLD if he wished to use the property. MLD further sought to enjoin Dillon from filing frivolous court documents, namely any future quitclaim deeds signed by Dillon. Lastly, MLD requested payment of back rent for Dillon's occupancy of Eagle Lodge since his first default on the loan, reimbursement of taxes paid by MLD during his occupancy, all attorney's fees, and court costs. MLD attached to its complaint a copy of the loan assumption agreement, the warranty deed transferring the property from Dillon to MLD, and a copy of the quitclaim deed that Dillon had signed on behalf of MLD purportedly transferring the property back to him.

¶8. A summons was issued to Dillon, who was personally served while he was in Pike County, as evidenced by the process server's return.

*Dillon's Motion to Dismiss*

¶9. Dillon, pro se, filed a motion to dismiss the complaint on July 19, 2021. Dillon claimed that MLD failed to properly serve him by delivering the complaint and summons to the wrong address. He further alleged that the complaint failed to state a claim upon which relief could be granted and that the sole remedy in this case was arbitration in accordance with the loan assumption agreement.

¶10. Dillon retained counsel who filed an amended motion to dismiss on January 17, 2022. In the amended motion to dismiss, Dillon argued that MLD was barred from bringing this action based on the res judicata effect of filings in the Pike County Justice Court and County

5

Court. The amended motion did not allege any failure to properly serve Dillon.

*Dillon's Answer and Motion to Compel Arbitration*

¶11. Dillon filed his answer and counter-claim ten days later. In his answer, Dillon pleaded that MLD failed to state a claim for which relief could be granted, that the statute of limitations had passed, and any other affirmative defenses that might become evident upon further discovery. Dillon admitted to signing the warranty deed conferring Eagle Lodge to MLD in 2013. However, Dillon claimed that the loan assumption agreement conferred ownership of Eagle Lodge to him, and as part of a counter-claim, he sought a declaratory judgment from the chancery court to "declare him Jerry Dillon as the rightful owner" of Eagle Lodge. In the counter-claim, Dillon specifically pleaded that "[j]urisdiction and venue are proper in this Court, as this matter concerns the title to real property located in Pike County, Mississippi."

¶12. On the same day that he filed his answer and counter-claim, Dillon also filed a motion to refer the case to arbitration. In the motion, Dillon quoted the language of the loan assumption agreement, which stated that the parties would discuss any dispute at least three times before they solicited an arbitrator to conduct arbitration under the rules of the American Arbitration Association. Dillon argued that no meetings had been held and that no arbitrator had been solicited. Thus, Dillon argued that the case should be referred to arbitration.

*Court Hearing on Dillon's Motions*

¶13. The court heard both Dillon's motion to dismiss and his motion to compel arbitration

on February 9, 2022. After arguments, the court entered an order bifurcating the trial and denying preliminary injunctive relief. The chancery court stated in its order that at the outset of the trial set for March 9, 2022, the court would decide whether or not the loan assumption agreement was in effect between the parties, and, if so, whether to refer the case to arbitration, mediation, or other means of alternative dispute resolution.

*First Order Compelling Arbitration*

¶14. On March 7, 2022, before beginning trial, the court held a hearing on the motion to refer the case to arbitration in the hopes of avoiding a three-day trial and conserving judicial resources. The court stated that should the case not be referred to arbitration, the sanctions MLD requested would be addressed, but if the case were dismissed and referred to arbitration, the court would not address this issue, as it would be moot. After hearing arguments, the court found that the case should be referred to arbitration and dismissed it without prejudice. That same day, the court entered an order finding that there was a valid arbitration agreement between the parties contained within the loan assumption agreement and that the controversy was within the scope of the arbitration agreement. The court explicitly stated:

> [T]he disagreement between the parties outlined by the pleadings are the types of disagreements contemplated to be resolved under the Agreement's dispute resolution clause (i.e. Arbitration Clause).

The court did not explicitly address MLD's argument that the loan assumption agreement, which contained the arbitration agreement, was null and void due to Dillon's default on the loan. However, the court stated that it "fails to discern any allegations of [the] existence of

7

external legal constraints that preclude arbitration." This first order simply compelled arbitration and dismissed the action without prejudice. Neither party appealed from this order of the chancery court.

*Subsequent Motions and Orders Concerning Arbitration*

¶15. On April 28, 2022, MLD filed a "Motion to Reopen the Case, Motion to Compel the Second and Third Meeting Dates or Allow the Parties the Meetings and Head Immediately Towards Arbitration."

¶16. In the motion, MLD alleged that Dillon and MLD met on April 16, 2022, but failed to resolve the dispute. MLD then sent a message to Dillon's counsel stating, "Please submit dates for Meeting #2. MLD members are free from [sic] the remainder of April, May, and June. Please advise." After receiving no response, MLD then offered specific dates to Dillon's counsel. However, Dillon's counsel replied that Dillon and the members of MLD would set dates for the next meeting and that Dillon preferred MLD's counsel not to be present. MLD's counsel responded that Dillon could not dictate how MLD's counsel would represent his clients and said that if Dillon's counsel did not wish to be there, MLD's counsel would reach out directly to Dillon. MLD then sent an email to Dillon offering to meet on any day in May at Dillon's convenience, either over the phone or via Zoom. MLD did not receive a response from Dillon or Dillon's counsel. After reciting these facts in the motion, MLD requested that the court compel the meetings or allow the parties to proceed straight to arbitration.

¶17. MLD's motion included a certificate of service indicating that a copy had been

delivered to Dillon's attorney, McNeil, via electronic means. However, MLD also had a thirty-day summons issued to Dillon's attorney, informing him of the need to respond to the "Complaint" within thirty days, or "a judgment or default will be entered against you." The docket does not reflect the filing of any return, and we assume arguendo that this summons was not served on McNeil.

¶18. MLD then filed an amended motion to reopen the case on April 29, 2022.[5] The amended motion contained a certificate of service, indicating that it was also delivered via electronic means to Dillon's attorney, McNeil. The body of the motion set forth the same information as the initial motion.

¶19. On May 9, 2022, MLD had a subpoena issued to Dillon at two addresses in Chicago "or anywhere he may be found." The subpoena required Dillon to be present at a hearing on June 6, 2022. Dillon was personally served with this subpoena by a private process server in Chicago on May 10, 2022, as shown in a return filed with the chancery court.

¶20. On June 3, 2022, Dillon filed his "Response to Motion to Reopen Case, Motion to Quash Subpoena, and for Sanctions." In his response, Dillon argued that the dates and times of meetings preceding arbitration were matters for the arbitrator to decide. He contended that the court should dismiss the matter with prejudice.[6]

---

[5] It is unclear why MLD filed an amended motion because the allegations in the amended motion were exactly the same as those contained in the original motion to reopen the case.

[6] In the motion to quash the subpoena, Dillon argued that he was a party and should have been properly served with a Rule 81 summons, not a witness subpoena. Further, Dillon argued that MLD's thirty-day summons, *see* M.R.C.P. 4(c)(4)(B), issued to McNeil was equally improper and should be quashed, as no agreement was made that Dillon's counsel

¶21. On June 10, 2022, MLD filed its "Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Compel Meeting Dates." MLD argued that an arbitrator could not handle the issue of the pre-arbitration meetings because no arbitrator could be hired until after the meetings were held. MLD therefore urged the court to compel the meetings or compel the parties to proceed to arbitration.[7]

¶22. The court held a hearing on July 7, 2022, on the motion to reopen the case, compel the pre-arbitration meeting, or compel arbitration. At the beginning of this hearing, the chancellor asked if the parties wanted a conference off the record, and the parties agreed. The hearing was not reconvened and the record does not reflect what the parties discussed with the chancellor. However, on July 7, 2022, the court entered an order compelling the pre-arbitration meeting. In the order, the court set the date of July 18, 2022, at 11:00 a.m. in Pike County for the third and final pre-arbitration meeting. The court ordered the parties to record the meeting to prove it occurred, but stated that no such recording would be used in any litigation over the substance of the conflict between the parties. Should either party choose not to attend the meeting, or should the meeting not be held for some other reason, or should the meeting not prove fruitful to settlement, the court ordered that the parties shall proceed to arbitration without further meetings. The court then stated that "[t]here being no further matter within the jurisdiction of this Court about this subject matter, this action is

would accept service for Dillon.

[7] On June 16, 2022, MLD filed a "Second Motion to Reopen the Case, Compel the Pre-arbitration Meetings, or Proceed to Arbitration" reiterating the same argument. MLD served this motion on Dillon's attorney via electronic mail.

hereby closed."

¶23. On July 18, 2022, after the court-ordered meeting did not occur, MLD filed its third motion to compel arbitration. In its motion, MLD alleged that on July 18, MLD's counsel and MLD member Brenda Holmes went to Eagle Lodge for the court-ordered meeting. Dillon, who was in Chicago, called Holmes and requested the meeting be moved. Holmes declined to reschedule. Dillon hung up and did not answer any further calls. MLD then emailed Dillon's counsel stating that Dillon had not been present at the meeting and that per the court's order, the parties should now move directly to arbitration. MLD suggested an arbiter and requested Dillon's attorney let MLD know if that person would be acceptable. Dillon's counsel told MLD to contact Dillon directly. MLD alleged that neither Dillon nor his counsel responded further. Based on this failure to communicate, MLD urged the court to grant its motion to compel Dillon to agree to an arbitrator and set an arbitration date. MLD served this motion on Dillon's attorney via electronic mail.

¶24. After this third motion to compel, the court became concerned over whether it still had jurisdiction to hear this case. On July 19, 2022, the court requested that both parties submit briefs explaining whether the court had jurisdiction over this matter.

¶25. On July 20, 2022, MLD filed its brief arguing that the chancery court was the only court with proper jurisdiction over this matter and that the court should enforce its previous orders compelling the arbitration. MLD cited Mississippi Code Annotated section 9-5-81 (Rev. 2019), which sets out the jurisdiction of the chancery courts in general. This statute provides that chancery courts shall have jurisdiction over all matters expressly conferred to

11

it by the Mississippi Constitution or statute, as well as any cases transferred to it by the circuit court or remanded to it by the Supreme Court. MLD further cited Article 6, Section 160 of the Mississippi Constitution, which sets forth additional jurisdiction of the chancery court:

> [I]n suits to try title and to cancel deeds and other clouds upon title to real estate, it shall have jurisdiction in such cases to decree possession, and to displace possession; to decree rents and compensation for improvements and taxes[.]

¶26. MLD further argued that the court had jurisdiction to enforce its previous orders. However, MLD cited no caselaw and, instead, relied solely on anecdotal arguments.[8] MLD also argued that Dillon waived his right to challenge jurisdiction because he failed to timely object to the chancery court's jurisdiction. Based on the above reasoning, MLD argued that the court should enforce its order compelling arbitration.

¶27. On July 29, 2022, Dillon filed his brief, arguing that the chancery court's previous ruling closing the case file ended the court's jurisdiction and that the current filing was frivolous. In his brief, Dillon argued that the chancery court dismissed this matter and compelled the parties to arbitration pursuant to the loan assumption agreement. He then

---

[8] MLD made the following two anecdotal arguments:

Plaintiffs are not asking this court to make any determination concerning the actual arbitration, but so, compelling its previous Two orders for arbitration. Similar, when Chancery Judges orders a paternity test. If the father does not actively seek to get his DNA collected nor make an appointment, he'll be in contempt of court. Another example, if the Court wants land separated and sold over a land dispute, one or both parties must agree to a land surveyor to accurately note when one plot of lands ends, and the other plot starts. If one party won't cooperate, he'll be in contempt of court.

argued that this was a jurisdictional ruling, and as such, it ended the matter. Because the case file was closed, Dillon argued that MLD would have had to file a new complaint and re-issue process. Dillon further contended that a second meeting had actually occurred between Dillon and five members of MLD on July 2, 2022. Dillon argued that the court's order compelling the pre-arbitration meeting and closing the file meant that the court would not issue any further orders, and if the meeting did not occur, the parties were to proceed directly to arbitration without further court action. Dillon further argued that "[o]nce the Court has lost its jurisdiction by compelling arbitration, ancillary matters regarding attending meetings and truthfulness and credibility of the parties should be left to the arbitrator."

¶28. On July 29, 2022, MLD filed a reply to Dillon's brief, clarifying that it was not requesting that the court manage the arbitration but, rather, that the court compel the defendant to agree to an arbitrator so that the arbitrator could manage the dispute.

¶29. On August 8, 2022, the chancery court then entered its final order. In this order, the court stated the following:

> Final judgment was rendered in this action by Order Compelling Arbitration and Dismissing Action without Prejudice (MEC 35) entered on March 7, 2022. No appeal was taken from that judgment, which is and remains the final judgment of the court in this action.
>
> After the appeal period elapsed, Counsel for Plaintiff filed several pleadings requesting the assistance of the Court in compelling Defendant to attending the pre-arbitration meetings required under the terms of the parties' agreement.
>
> . . . .
>
> In an attempt to urge the parties toward compliance with their agreement, the Court entered an Order Regarding Pre-arbitration Meeting and Closing File (MEC 51) [ordered July 7, 2022].

. . . .

> Entry of that order did not resolve the parties dispute nor did it aid them in proceeding toward arbitration. The Court, having now more maturely considered the action ordered in said Order (MEC 51), finds that the Court was without personal jurisdiction over Defendant, since so [sic] process was served upon him and the response filed by Counsel properly raised such objection. The Court further finds that the Court lacks subject matter jurisdiction, and rests upon the findings of the Court made in the Final Order of March 7, 2022 (MEC 35) dismissing the case, from which no appeal was taken. The Court hereby withdraws the Order Regarding Pre-arbitration Meeting and Closing File (MEC 51).
>
> There being no matter properly before the Court, the Court declines to issue relief to Plaintiff, final dismissal of this action having occurred on March 7, 2022.

¶30.    After the entry of this order, on August 9, 2022, MLD filed a notice of appeal.  In its appellate brief, MLD raises a single issue: "does the Chancellor have jurisdiction to hear a land contract dispute?"  Dillon did not file a brief with this Court.[9]

**STANDARD OF REVIEW**

---

[9] Whenever the appellee has failed to file a brief, a reviewing court is presented with two options. *McGrew v. McGrew*, 184 So. 3d 302, 306 (¶10) (Miss. Ct. App. 2015).  The first is to take the appellee's failure to file a brief as an admission of error and reverse.  *Id*. However, this should only be done in cases where the record is "complicated or voluminous," and the appellant has presented an apparent case of error.  *Id*.  The second option is to simply disregard the appellant's argument and affirm, regardless of the appellee's failure to file a brief.  *Id*.  This should only be done when the record clearly establishes that no error occurred.  *Id*.  Further, "it is not the obligation of this Court to exhaustively study the record and research the authorities, and, in effect, brief the matter on behalf of the appellee in an effort to avoid the force of the appellant's argument." *Rothschild v. Hermann*, 542 So. 2d 264, 265 (Miss. 1989), *overruled on other grounds by Jones v. Chandler*, 592 So. 2d 966, 971 (Miss. 1991); *accord Westinghouse Credit Corp. v. Deposit Guar. Nat'l Bank*, 304 So. 2d 636, 637 (Miss. 1974).
Although the record before us is not voluminous, the procedural history is complicated.  Based on our review of the record and the appellant's brief, we find that the record is sufficient to render an opinion.

14

¶31.   This Court "review[s] jurisdictional issues de novo.  When considering jurisdictional issues, the Court sits in the same position as the trial court, 'with all facts as set out in the pleadings or exhibits, and may reverse regardless of whether the error is manifest.'" *Canadian Nat. Ry. Co. v. Waltman*, 94 So. 3d 1111, 1115 (¶6) (Miss. 2012) (quoting *Knight v. Woodfield*, 50 So. 3d 995, 998 (¶11) (Miss. 2011)).

## DISCUSSION

¶32.   MLD appeals from the chancery court's August 8, 2022 order in which the court stated that its March 7, 2022 order compelling arbitration was a final judgment and withdrew its subsequent July 7, 2022 order concerning pre-arbitration meetings.  The chancery court held that it did not have personal or subject matter jurisdiction to order the pre-arbitration meeting.  We agree that once the chancery court compelled arbitration, any other arbitration-related matters were to be decided by the arbitrator, and the court did not err by withdrawing its July 7, 2022 order.

### A.   Chancery Court's Jurisdiction over Dillon and the Initial Dispute

¶33.   MLD initially filed a complaint seeking possession of land claimed by Dillon.  In his first motion to dismiss, Dillon claimed he was not adequately served with process.[10] However, in his second motion to dismiss, he abandoned this claim, and in his answer to the complaint, he counterclaimed and pleaded that the court had jurisdiction and that venue was proper.  Thus, Dillon waived any claim to lack of personal jurisdiction over the initial claim. He further petitioned the court to enforce the parties' arbitration agreement.

---

[10]  The record reflects that Dillon was personally served in Pike County by a process server.

¶34. There is no doubt that the chancery court had subject matter jurisdiction over the parties' initial land dispute. Subject matter jurisdiction "turns on the type of case at issue." *Hogrobrooks v. Progressive Direct*, 858 So. 2d 913, 918 (¶16) (Miss. Ct. App. 2003). "In reviewing a subject-matter jurisdiction challenge to the Constitution's grant of authority, the Supreme Court looks at the type of case by examining the nature of the controversy and the relief sought." *Id.* Section 160 of Article 6 of the Mississippi Constitution lays out the jurisdiction of the chancery court in land matters:

> And in addition to the jurisdiction heretofore exercised by the chancery court in suits *to try title and to cancel deeds and other clouds upon title to real estate*, *it shall have jurisdiction in such cases to decree possession, and to displace possession; to decree rents and compensation for improvements and taxes*; and in all cases where said court heretofore exercised jurisdiction, auxiliary to courts of common law, it may exercise such jurisdiction to grant the relief sought, although the legal remedy may not have been exhausted or the legal title established by a suit at law.

(Emphasis added). This clearly establishes the subject matter jurisdiction of chancery courts in Mississippi to handle matters dealing with the possession of real estate, rents, and compensation for improvements and taxes. Our appellate courts have reiterated the chancery courts' jurisdiction many times. *Walters v. Gates*, 362 So. 3d 101, 104 (¶11) (Miss. Ct. App. 2023) (finding that parties' claims of adverse possession and cancellation of a deed should have been brought in chancery court); *Barham v. Miss. Power Co.*, 266 So. 3d 994, 997 (¶10) (Miss. 2019) (reiterating that claims involving title to real estate were within the chancery court's jurisdiction); *Graves v. Dudley Maples L.P.*, 950 So. 2d 1017, 1022 (¶22) (Miss. 2007) ("However, no justifiable basis exists for arguing that a chancery court does not have jurisdiction over matters involving property. Such authority is conferred by our constitution,

16

history, and precedent."). Here, MLD's action primarily sought a court decree regarding possession of the land at issue and for rent and taxes owed by Dillon to MLD for his time occupying the land. Based on clearly established precedent and authority, the chancery court had subject matter jurisdiction over the property dispute and personal jurisdiction over Dillon.

¶35. Nonetheless, even disputes concerning land can be subject to arbitration if the parties' contract indicates their intent to resolve their disputes by arbitration. Mississippi Code Annotated section 11-15-1 (Rev. 2019) specifically states:

> All persons, except infants and persons of unsound mind, may, by instrument of writing, submit to the decision of one or more arbitrators *any controversy* which may be existing between them, which might be the subject of an action[.]

(Emphasis added). This includes contracts that touch on land. For example, applying Mississippi law, a federal district court held that an arbitration provision in a deed-of-trust rider was enforceable and that arbitration should be compelled when a party stopped making payments. *New S. Fed. Sav. Bank v. Anding*, 414 F. Supp. 2d 636, 639 (S.D. Miss. 2005). In *Century 21 Maselle and Associates Inc. v. Smith*, 965 So. 2d 1031, 1033 (¶¶2-3) (Miss. 2007), the Mississippi Supreme Court directed that a dispute involving a contract for sale of a home be referred to arbitration consistent with the parties' arbitration provisions contained in a contract. Accordingly, just because a chancery court has original jurisdiction over land matters, if such cases involve land contracts that include arbitration provisions, the chancery court must determine if the arbitration agreement was valid and whether the dispute fell within the scope of the arbitration agreement. *E. Ford Inc. v. Taylor*, 826 So. 2d 709, 713

17

(¶9) (Miss. 2002). If the court decides this two-pronged question in the affirmative, the court must refer the dispute to arbitration for resolution.

### B. Enforceability of the March 7, 2002 Order Compelling Arbitration

¶36. It remains undisputed that the chancery court entered an order compelling arbitration in this case. Although MLD initially argued that the parties' arbitration agreement was null and void because Dillon had defaulted on the bank loans, the chancery court rejected MLD's position and entered the March 7, 2022 order compelling arbitration. Neither party appealed from that court order or sought reconsideration or clarification of it.

¶37. "[A]n order compelling arbitration which disposes of all the issues before the trial court or orders the entire controversy to be arbitrated is a final decision, and therefore, immediately appealable." *Sawyers v. Herrin-Gear Chevrolet Co.*, 26 So. 3d 1026, 1034 (¶19) (Miss. 2010). In this case, neither party appealed from the chancery court's order, thus waiving their right to do so. "Even though a party has the right to appeal an order compelling arbitration, that right can be waived." *Coombs v. Jason Pilger Hyundai of Gautier,* 285 So. 3d 730, 736 (¶17) (Miss. Ct. App. 2019). In that case, we held that "[a]s a final appealable order, [a party] had thirty days under Rule 4(a) of the Mississippi Rules of Appellate Procedure to appeal the order compelling arbitration." *Id*. at 736-37 (¶18). The parties did not appeal within that time period. *Id*. at 737 (¶18). As a result, we found their "[f]ailure to timely appeal leaves the supreme court and this court without jurisdiction to consider the issue." *Id*. Similarly, in the case at hand, neither party appealed from the chancery court's order compelling arbitration, so the order became final and binding on the parties.

18

## C.     Resolution of Pre-arbitration Requirements

¶38.    Both parties in this appeal acknowledge the order compelling arbitration, and MLD does not challenge the validity of that order.  MLD's actions after entry of the order reflect that MLD accepted the court's ruling to arbitrate the dispute.  However, MLD did not file an arbitration complaint with the American Arbitration Association as the arbitration agreement requires.  Instead, when Dillon refused to comply with the pre-arbitration requirements of meeting and choosing an arbitrator, MLD sought further court intervention to compel Dillon to comply with the pre-arbitration conditions.

¶39.    In the arbitration clause of the loan assumption agreement, the parties did not specify what forum would resolve any pre-arbitration condition disputes.  In such a case, the United States Supreme Court has held that "when determining whether pre-arbitration requirements have been met, the decision rests with the arbitrator." *BG Group PLC v. Argentina*, 572 U.S. 25, 34 (2014).  In particular, "[i]ssues of procedural arbitrability, such as whether a claim in arbitration was made and pursued in a timely manner, *whether the pre-arbitration requirements of the applicable dispute resolution procedure have been satisfied*, or whether a claim in arbitration has been waived are questions for the arbitrator to resolve, not for the courts." *Howsam v. Dean Witter Reynolds Inc.*, 537 U.S. 79, 84-85 (2002) (emphasis added); *accord Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). The issue of who decides pre-arbitration requirements often arises in cases where an employee must first exhaust internal grievance procedures prior to arbitration. The Supreme Court explained:

Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration.

. . . .

Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.

*John Wiley & Sons Inc. v. Livingston*, 376 U.S. 543, 557 (2002).

¶40. Our Court dealt with a pre-arbitration condition in *Dr. Arenia C. Mallory Community Health Center Inc. v. Davis-Cornelius*, 189 So. 3d 708 (Miss. Ct. App. 2016). In that case, Davis-Cornelius was the CEO of Community Health Center. *Id*. at 710 (¶3). After her employment was terminated, Davis-Cornelius sued Community Health Center for the remaining pay promised by her contract (almost $1,000,000). *Id*. at (¶¶4-7). Community Health Center filed a motion to compel arbitration, arguing that the employment contract required the parties to submit the matter to arbitration. *Id*. at (¶8). The circuit court held that because the arbitration clause stated the arbitration panel must be formed within a sixty-day window following the CEO's termination, and because that requirement was not met, the arbitration clause was not enforceable. *Id*. at 711-12 (¶9). The circuit court thus denied the motion to compel arbitration. *Id*.

¶41. On appeal, our Court held that "any issue of timeliness or failure to comply with the procedural requirements of the arbitration agreement was for the arbitration panel, not the circuit court, to decide." *Id*. at 712 (¶11). We cited the United States Supreme Court's

20

decision in *Howsam*:

> [In *Howsam*] the Court addressed who—a court or an arbitrator—should decide whether a claim was initiated within the time limit. The Court held that "procedural questions of arbitrability which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide." Thus, "the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability." The Court continued, "in the absence of an agreement to the contrary, issues of procedural arbitrability, i.e., whether prerequisites such as time limits *and other conditions precedent to an obligation to arbitrate* have been met, are for the arbitrators to decide."

*Dr. Arenia C. Mallory Cmty. Health Ctr.*, 189 So. 3d at 713-14 (¶20) (emphasis added) (internal quotation marks, citations, and other emphasis omitted).[11] Based on *Howsam*, we reversed the circuit court's order and remanded the case to the circuit court to compel arbitration.

¶42. In the present case, MLD and Dillon clearly intended to arbitrate any dispute related to this loan assumption agreement. Although they gave themselves an opportunity to conduct pre-arbitration meetings to avoid arbitration, they clearly stated that "arbitration shall be the final means of dispute resolution relative to this agreement." Thus, any question of compliance or non-compliance with the pre-arbitration meetings is for the arbitrator to decide.

**CONCLUSION**

---

[11] This general rule does have one exception, however. "[A] court could deny arbitration only if it could confidently be said not only that the claim was strictly 'procedural,' but also that it should operate to bar arbitration altogether." *Id*. at (¶21) (quoting *Gen. Warehousemen & Helpers Union Local 767 v. Albertson's Distrib. Inc.*, 331 F. 3d 485, 488 (5th Cir. 2003)). This interpretation is "rare" and should only be used to deny a motion to compel arbitration where "no rational mind" can question whether the parties intended for a procedural provision to preclude arbitration in its entirety. *Id*.

¶43. Finding no error by the chancery court in withdrawing its July 7, 2022 order and reiterating its order compelling arbitration, we affirm. Pursuant to the court's order compelling arbitration, the parties may proceed to file their petition with the American Arbitration Association (AAA) as the parties had agreed. The AAA's rules contain a procedure for the selection of an arbitrator, who then may resolve any disputes brought before him or her concerning any failures of the parties to comply with pre-arbitration conditions.[12] Pursuant to Mississippi Code Annotated section 11-15-21 (Rev. 2019),[13] the chancery court retains personal and subject matter jurisdiction to enforce an arbitration decision, if any.

¶44. **AFFIRMED AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

---

[12] Both the commercial and consumer rules of the AAA provide procedures for filing a claim, selecting an arbitrator, and proceeding with arbitration in the absence of one or more parties.

[13] Mississippi Code Annotated section 11-15-21 states:

Upon presentation of the articles of submission and the award to the court designated in the submission or the court having jurisdiction of the subject matter of the award, the court shall, upon motion, confirm the award, unless the same be vacated or modified, or a decision thereon be postponed, as hereinafter provided. An award shall not be confirmed unless notice in writing of such motion shall have been served on the adverse party at least five days before the hearing, to be served as other process; but such motion shall not be made after the expiration of one year from the making and publication of the award.